THE COUNTY OF DALLAS,
Petitioner,

v.

Linda L. WILAND, as Administrator for
the Estate of Stanley Gaines, Jim Gill-
iand, and Sonia Avina, Respondents.

No. 04–0247.

Supreme Court of Texas.

Argued March 22, 2005.

Decided Feb. 16, 2007.

Rick Thompson, Deborah G. Hankinson, Law Offices of Deborah Hankinson PC, Marc H. Richman, Law Offices of Marc H. Richman, Grant Hugh Brenna, Bart Bevers, Dallas TX, for Petitioner.

Steven K. DeWolf, Todd R. Hixon, Haakon Thomas Donnelly, Bellinger & DeWolf, L.L.P., Lisa Matz, Clerk, Fifth Court of Appeals, Dallas, Alex Wilson Albright, Douglas Alexander, Alexander Dubose Jones & Townsend, LLP, Austin TX, for Respondent.

Richard W. Carter, Combined Law Enforcement Associations of Texas, Fort Worth TX, for Amicus Curiae.

Justice HECHT delivered the opinion of the Court, in which Justice WAINWRIGHT, Justice GREEN, Justice JOHNSON, and Justice WILLETT joined.

Three deputy constables covered by Dallas County's civil service system contend that the County terminated their employment without just cause and without a hearing, thereby denying them substantive and procedural due process in violation of the Fourteenth Amendment to the United States Constitution,[1] and entitling them to actual damages under the Civil Rights Act of 1871[2] (to which we refer as "section

---

1. U.S. CONST. amend. XIV, § 1 ("No State shall ... deprive any person of life, liberty, or property, without due process of law....").

2. 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....").

1983"). The trial court granted partial summary judgment for the deputies on liability issues and rendered judgment on the jury's findings of actual damages, and the court of appeals affirmed.[3] We hold that:

- the system's covered employees cannot be discharged without just cause, and thus they have a property interest in continued employment;

- the deputies were discharged without the hearing before the civil service commission promised by system rules to determine whether just cause existed, and thus they were denied procedural due process;

- for having been denied procedural due process, the deputies could recover damages for injuries resulting from the loss of their employment, as they requested, only if just cause did not exist for their termination;

- because the trial court erred in holding that the absence of just cause had been established as a matter of law, the deputies' claim for denial of procedural due process must be remanded for further proceedings; and

- a government employee's interest in continued employment is not protected by substantive due process, and even if it were, the County's decision to discharge the constables was not arbitrary and capricious so as to violate substantive due process.

Accordingly, we reverse the judgment of the court of appeals and remand the case to the trial court.

## I

Before taking office on January 1, 2001, newly-elected Dallas County Constable Mike Dupree sent letters to deputy constables Stanley Gaines, Jimmie Gilliand, and Sonia Avina, notifying them that "your services under my administration will not be required." He did not say why. After taking the oath of office, Dupree refused to administer the oath to the three deputies[4] and collected their badges and weapons.

■■■ "For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all."[5] This rule applies by statute to deputy sheriffs,[6] leading some courts to conclude that a deputy sheriff's term of employment automatically expires when the sheriff's term of office does.[7] While there is no similar statutory provision for deputy constables, they, too, are at-will employees generally, and in the case of *Arrington v. County of Dallas*, the court of appeals

**3.** 124 S.W.3d 390 (Tex.App.-Dallas 2003).

**4.** *See* TEX. LOC. GOV'T CODE § 86.011 (requiring that deputy constables be appointed by the constable, approved and confirmed by the county commissioners court, and qualified in the manner provided for deputy sheriffs); *id.* § 85.003 (requiring that deputy sheriffs take the oath of office).

**5.** *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998) (citing *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex.1993) (per curiam); *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991); *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 723 (Tex.1990); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734–735 (Tex.1985); *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 75, 10 S.W. 99, 102 (1888)).

**6.** TEX. LOC. GOV'T CODE § 85.003(c) ("A deputy serves at the pleasure of the sheriff.").

**7.** *See Abbott v. Pollock*, 946 S.W.2d 513, 517 (Tex.App.-Austin 1997, pet. denied); *El Paso County Sheriff's Deputies Ass'n, Inc. v. Samaniego*, 802 S.W.2d 727, 728 (Tex.App.-El Paso 1990, writ denied).

concluded that because the law enforcement authority granted sheriffs and their deputies is similar to the authority granted constables and their deputies, "[t]he term of deputy constables, as that of deputy sheriffs, expires when the principal's term expires."[8]

■ But at-will employment may be modified. For public employees, this may be done by agreement with the employer, as in a personnel manual,[9] and through civil service systems.[10] Since 1971, certain counties have been authorized to create civil service systems for certain employees,[11] and since 1981, certain counties have been authorized to create sheriff's department civil service systems for department employees, including deputies.[12] In 1989, while the *Arrington* case was pending decision, the Legislature expanded the group of employees that a county could include in its general civil service system,[13] thereby allowing a county to choose to extend civil service protection to deputy constables.[14]

8. 792 S.W.2d 468, 471 (Tex.App.-Dallas 1990, writ denied).

9. *City of Odessa v. Barton*, 967 S.W.2d 834, 835 (Tex.1998) ("Here, in its employment manual, the City of Odessa conferred the benefit of just-cause status on its employees, while at the same time limiting their remedy upon termination to administrative review.... The parties agree that the manual modified [employees'] at-will status.").

10. *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006) ("Absent an express agreement to the contrary, Texas is an employment-at-will state.... However, an employer may modify the employment terms of the at-will status of its employees. In this case, the [Harris County Sheriff's Department Civil Service] Commission's rules implement procedures for disciplinary actions, including termination for just cause." (citations omitted)); TEX. LOC. GOV'T CODE §§ 158.002 & 158.009 (authorizing a civil service commission in certain counties to adopt rules regarding tenure, layoffs, dismissals, and disciplinary actions); *id.* §§ 158.032 & 158.035(a) (same for sheriff's department civil service commissions in certain counties).

11. Act of May 14, 1971, 62nd Leg., R.S., ch. 262, 1971 Tex. Gen. Laws 1151 (allowing a county with a population of 300,000 or more to establish a civil service system covering "any person who obtains his position by appointment and who is not authorized by statute to perform governmental functions in his own right involving some exercise of discretion, ... [but not] a holder of an office the term of which is limited by the Constitution of the State of Texas") (codified as amended at TEX. LOC. GOV'T CODE §§ 158.001–.015 (allowing a county with a population of 200,000 or more to establish a civil service system covering "a person who obtains a position by appointment and who is not authorized by statute to perform governmental functions involving an exercise of discretion in the person's own right, unless the person is included by a local civil service rule adopted under the procedures outlined in Section 158.009; or a person included in the coverage of a county civil service system as the result of an election held under Section 158.007 ... [but not] a person who holds an office the term of which is limited by the constitution of this state")).

12. Act of May 6, 1981, 67th Leg., R.S., ch. 119, 1981 Tex. Gen. Laws 295 (allowing a county with a population of more than 1.5 million to establish a civil service system covering "a deputy sheriff and any other employee of the [sheriff's] department") (codified as amended at TEX. LOC. GOV'T CODE §§ 158.031–.040 (allowing a county with a population of more than 500,000 to establish a civil service system covering "an employee of a sheriff's department ... includ[ing] a deputy sheriff")).

13. Act of May 22, 1989, 71st Leg., R.S., ch. 881, 1989 Tex. Gen. Laws 3879 (adopting the definition of "employee" now contained in TEX. LOC. GOV'T CODE § 158.001(2), *supra* note 11, and authorizing a civil service commission to adopt rules regarding "the definition of a county employee").

14. *Hearings on S.B. 1006 Before the House County Affairs Comm.*, 71st Leg., R.S., 1–2 (May 9, 1989) (statement of Rep. Steven Wolens) (transcript available from House Audio/Video Services) ("So, simply, what this

Dallas County has had a civil service system since 1975.[15] Until the commissioners court orders establishing the system were codified on July 17, 2001 [16]—and therefore for purposes of this case—the system was set out in the *Dallas County Administrative Policies and Procedures Manual* ("the Manual"). From 1990 to 2003, deputy constables were Category "C" employees covered by the system under section 2.00.[17]

Section 1.00 of the Manual states that the Dallas County civil service system "is a systematic method of appointing employees to office and promoting them for competency and performance." On the inside of the cover page is the following statement: "Nothing in the [Manual] is to be construed as a contract of employment or a provision guaranteeing the specific term or tenure of employment." [18] The rules governing dismissal state in pertinent part:

> 4.21 An employee may be dismissed from the County without prior notice for just cause including, but not limited to:
>
> (A) incompetence;
>
> (B) offensive conduct;

(C) insubordination;

(D) conviction of a felony;

(E) conviction of a misdemeanor involving moral turpitude;

(F) failure to report for work without reporting the reason for absence to his immediate supervisor within 24 hours of his normal working shift;

(G) gross or repeated neglect of duty; or

(H) other conduct inconsistent with the interest of the County.

4.22 The employee shall be furnished a written notice of termination at the time of termination, or the earliest possible time after the date of dismissal. Such notice shall specify the cause for termination....

4.23 The supervisor shall inform his Elected Official/Department Head of his intention to dismiss an employee, specifying the cause(s) and do so only with the Elected Official/Department Head's approval unless the Elected Official/Department Head has previ-

---

Bill does is it makes the deputy constables subject to the civil service act, and in doing so, it takes care of two things. Number one it protects deputy constables ... from being fired for political reasons, and secondly, it will benefit the County because it delineates when a deputy constable can be fired and what those proper procedures are for firing a deputy constable."); *Hearings on S.B. 1006 Before the Senate Intergovernmental Relations Comm.*, 71st Leg., R.S., 2 (Apr. 4, 1989) (statement of Sen. Eddie Bernice Johnson) (transcript available from Senate Staff Services) ("[T]his legislation simply provides for the constables to come into the civil service of the county civil service program."); *see also* Letter Op. Tex. Att'y Gen. No. 97–016 (1997) (noting that section 158.009 was amended "for the express purpose of allowing counties to include deputy constables within their civil service systems"); Op. Tex. Att'y Gen. No. DM–385 (1996) (discussing the 1989 amend-

ments to section 158.009 and "conclud[ing] that a commission may adopt a rule defining deputy constables as 'employees' covered by the system").

**15.** *See* DALLAS COUNTY CODE § 86–52.

**16.** *Id.* ch. 86.

**17.** All references to Manual provisions are to Section A.

**18.** The dissent states that "nothing shows the County ever adopted this disclaimer; it is the only part of the Manual in our record without an order number and date showing when it was adopted." *Post* at 364. It is not clear why the dissent questions the legal effect of the disclaimer when the deputies have never disputed that it was part of the Manual in effect when their employment terminated.

ously given the supervisor termination authority.

4.24 Employees who are being dismissed are entitled to a predetermination conference with their Elected Official/Department Head to be told the reasons for termination.

4.25 If a non-probationary, regular employee feels he is being unjustly terminated he may utilize the grievance system....

4.26 If a grievance is upheld, the ... employee may be reinstated and may be granted back pay....

Complaining that they had been wrongfully terminated, deputies Gaines, Gilliand, and Avina timely filed grievances. The civil service personnel director rejected them, explaining that

the Constable-elect did not terminate [the deputies]. However, it is the opinion of Dallas County that the newly elected Constable is not obligated to swear-in previous Deputy Constable employees. This conclusion was based on the premise that the Deputy Constable serves at the discretion of the Constable and the Constable has the authority and responsibility to select his own staff.

The civil service commission, comprised of three county commissioners, conducted a hearing limited to the issue of whether the deputies' grievances could be presented under the civil service system. The commission determined that the deputies' grievances could not be presented, relying on advice from the district attorney that the deputies' employment had automatically expired with the term of the prior constable, that the new constable's refusal to reappoint them was not a dismissal subject to the Manual's provisions, and that there-

fore no employment action had occurred of which the deputies could complain. The commission did not consider whether there was just cause for dismissing the deputies.

The three deputies did not attempt to appeal the commission's decision.[19] Instead, they sued the County under section 1983, alleging that by terminating them without just cause and without a hearing, the County had denied them substantive and procedural due process in violation of the Fourteenth Amendment. The deputies did not ask the trial court to order the commission to give them a hearing on the merits of their grievances. The deputies moved for partial summary judgment, arguing that they had been denied procedural and substantive due process, resulting in their loss of employment. The County, in its response, contended that the deputies' employment ended automatically when the previous constable's term expired and that the refusal to reappoint was not a dismissal. The trial court granted the deputies' motion, stating in its order:

Plaintiffs argue that Constable Dupree's failure to swear them in was tantamount to a dismissal. The Court, after reviewing the relevant law, agrees with Plaintiffs' position and concludes that the failure to swear in Plaintiffs Gilliand, Avina and Gaines was the equivalent of dismissal. Accordingly, they were entitled to the substantive and procedural protections set forth in the policies and procedures handbook including those set forth in the "dismissal" section beginning at section 4.21. To the extent that Plaintiffs' Amended Motion for Partial Summary Judgment seeks a judicial determination that they were entitled to

**19.** *See* TEX. LOC. GOV'T CODE § 158.012(a) ("A county employee who, on a final decision by the commission, is demoted, suspended, or removed from the employee's position may appeal the decision by filing a petition in a district court in the county within 30 days after the date of decision.").

those protections but did not receive them, their motion is GRANTED.

Damages were then tried to a jury. The jury was instructed to consider only the deputies' lost earnings and benefits, and mental anguish and emotional distress, "resulting from ... dismissal from ... employment". The jury was not asked to consider whether just cause existed for the deputies' discharge nor to assess damages resulting from the denial of a hearing before the civil service commission. The trial court rendered judgment on the verdict awarding the deputies damages as follows:

Lost earnings and employee benefits, and mental anguish and emotional distress—

in the past
| | | |
|---|---|---|
| Gaines's estate [20] | $ | 400,000.00 |
| Gilliand | $ | 223,560.00 |
| Avina | $ | 168,955.00 |

in the future
| | | |
|---|---|---|
| Gilliand | $ | 300,000.00 |
| Avina | $ | 439,550.00 |

| | | |
|---|---|---|
| Total damages | $ | 1,532,065.00 |
| Prejudgment interest | $ | 215,748.33 |
| Attorney fees | $ | 362,554.50 |
| Costs | $ | 8,147.02 |

The court of appeals affirmed.[21] It agreed with the trial court that Dupree's failure to swear in the deputies was "tantamount to dismissal" and therefore covered by the Manual.[22] The court of appeals construed the Manual to require just cause for every dismissal.[23] It rejected the County's argument that section 4.21 requires just cause only if a dismissal is without prior notice, noting that when notice is given, section 4.22 requires that it "state the cause for termination".[24] The court also rejected the County's argument that the list in section 4.21 is not exclusive, observing that it "includes virtually every conceivable reason for dismissal except termination without cause. By omission, termination without cause is unavailable." [25] The court agreed with the County that the Manual gives employees no contract rights, as expressly stated on the inside front cover, but disagreed that that meant employment remained at-will.[26] Rather, said the court, the Manual gave covered employees a property interest of which they could not be deprived without procedural due process guaranteed by the Fourteenth Amendment.[27] The process due, the court said, was that set out in the

20. Deputy Gaines died on October 11, 2001, four months after suit was filed, and his interests have since been represented by Linda L. Wiland, administratrix of his estate.

21. 124 S.W.3d 390, 394 (Tex.App.-Dallas 2003).

22. *Id.* at 399–400 ("The trial court's finding that the County's refusal to swear in the Deputies was tantamount to dismissal reflects both Fifth Circuit law and common sense. Likewise, we see no distinction between termination and failure to 're-swear in' or rehire. Under the law, the Deputies were terminated. *See Battin v. Samaniego,* 23 S.W.3d 183, 189 n. 29 (Tex.App.-El Paso 2000, pet. denied) (citing *Brady v. Fort Bend County,* 145 F.3d 691, 703 (5th Cir.1998) ('that the deputies were terminated by a "failure to rehire" rather than a "dismissal" is irrelevant to the question of whether they were impermissibly

terminated'); *Warnock v. Pecos County,* 116 F.3d 776, 779 n. 1 (5th Cir.1997) ('[f]or our purposes, there is no difference between firing and declining to reappoint.')); *see also McBee v. Jim Hogg County,* 730 F.2d 1009, 1015 (5th Cir.1984) (en banc) (same).").

23. *Id.* at 398.

24. *Id.* at 397–398 (emphasis omitted).

25. *Id.* at 397.

26. *Id.* at 398–399 (citing *Ingram v. Dallas County, Tex.,* 688 F.Supp. 1146, 1152–1153 (N.D.Tex.1988) (concluding that employees covered by the Dallas County civil service system have a property interest in continued employment)).

27. *Id.* at 399.

Manual, including a hearing on their grievances.[28] Since the only hearing the deputies had been afforded was limited to whether they were entitled to present their grievances, they had been denied procedural due process and were entitled to the damages found by the jury.[29] The court thus found it unnecessary to address what it called "the essentially identical substantive due process claim."[30]

We granted the County's petition for review.[31]

## II

■ The Fourteenth Amendment protects interests in life, liberty, and property.[32] The deputies claim a property interest in continued employment by the County. They concede that they have no contract rights, as the Manual expressly states, but they argue that section 4.21 provides that covered employees can be dismissed only for cause. In other words, the deputies contend that while they have no rights *by agreement* with the County, they nevertheless have a property interest in continued employment created *by law*, that is, by the County's ordinance. If their reading of the Manual is correct, they have a protected property interest, for as the United States Supreme Court has stated, "public employees who can be discharged only for cause have a constitutionally protected property interest in

their tenure and cannot be fired without due process."[33]

But the County responds that the deputies' reading of the Manual is not correct. Section 4.21 states only that "[a]n employee *may be dismissed* ... without prior notice for just cause" (emphasis added); it does *not* state that an employee may be dismissed only for just cause, nor does it state that an employee may not be dismissed without just cause *with* prior notice. The County notes our recent holding in *Matagorda County Hospital District v. Burwell* that "a statement in a personnel policy manual that '[e]mployees may be dismissed for cause' [does not] constitute[ ] an agreement that dismissal may be *only* for cause, thereby modifying the at-will employment relationship."[34]

The deputies reply that section 4.21 must be read in conjunction with the provisions immediately following, requiring that an employee be given notice of termination "specify[ing] the cause" (section 4.22), that a supervisor advise his superior of his intent to dismiss an employee, "specifying the cause(s)" (section 4.23), that employees being dismissed are entitled to a predetermination conference "to be told the reasons for termination" (section 4.24), and that an employee may complain that he is being "unjustly terminated" (section 4.25). The personnel manual in *Burwell* contained no other provisions suggesting that

28. *See id.* at 399–400.

29. *Id.*

30. *Id.* at 400.

31. 48 Tex. Sup.Ct. J. 383 (Feb. 11, 2005).

32. *Supra* note 1.

33. *Gilbert v. Homar*, 520 U.S. 924, 928–929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (citing *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S.

593, 602–603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)); *accord Bexar County Sheriff's Civil Serv. Comm'n v. Davis*, 802 S.W.2d 659, 661 n. 2 (Tex.1990) ("A 'for cause' limitation on dismissal of a public employee creates an individual entitlement to continued employment that is considered a protected property right for purposes of the Due Process Clause.").

34. 189 S.W.3d 738, 738 (Tex.2006) (per curiam).

dismissal could only be for cause. The deputies argue that if the Manual does not require cause for dismissal, then the civil service system is worthless. The County answers that the Manual affords important procedural protections even though employment remains at-will. It assures that personnel decisions cannot be made willy-nilly and that employees are entitled to review at the highest level of county government—by a commission comprised of three members of the commissioners court. The deputies deride this as a "feel-good" civil service system lacking in any real substance.

■ The deputies also note that civil service employees are allowed by statute to appeal commission decisions to the district court under the substantial evidence rule.[35] If the commission need not have a reason for its decisions, the deputies ask, what is the point of appeal? The right of appeal assumes something to appeal *from*—that is, a decision that can be wrong. But the deputies concede, as they must, that no statute requires a county with a civil service system to also require cause for dismissal. Nothing prohibits a county from adopting a civil service system that affords only procedural rights while employment remains at-will.[36] The statutory right of appeal, the County argues, is for employees under a civil service system that gives some right to continued employment. The fact that appeal is ineffectual for employees with no such rights cannot be used to imply a requirement that all civil service employees have them when the statutes governing civil service systems are silent on the subject.

■ The County's civil service system clearly provides covered employees important procedures for hearing and deciding grievances, but the entitlement to procedure alone does not create a property interest;[37] moreover, the entitlement to

---

**35.** TEX. LOC. GOV'T CODE § 158.012("(a) An employee who, on a final decision by the commission, is demoted, suspended, or removed from a position may appeal the decision by filing a petition in a district court in the county within 30 days after the date of the decision. (b) An appeal under this section is under the substantial evidence rule, and the judgment of the district court is appealable as in other civil cases. (c) If the district court renders judgment for the petitioner, the court may order reinstatement of the employee, payment of back pay, or other appropriate relief.").

**36.** *See* TEX. LOC. GOV'T CODE § 158.009(a) ("Except as provided by Section 158.010, the commission shall adopt, publish, and enforce rules regarding: (1) the definition of a county employee; (2) selection and classification of county employees; (3) competitive examinations; (4) promotions, seniority, and tenure; (5) layoffs and dismissals; (6) disciplinary actions; (7) grievance procedures; and (8) other matters relating to the selection of county employees and the procedural and substantive rights, advancement, benefits, and working conditions of county employees."); *cf. Harris*

*County Personnel Regulations* (July 1, 2006), at http://www.co.harris.tx.us/hrrm/Personnel Regulations.aspx (last accessed ——) (providing procedures under TEX. LOC. GOV'T CODE §§ 160.001–.006 "to settle any grievance between the County and an employee as quickly as possible to assure efficient work operations and maintain positive employee morale", but stating that "[e]mployment is at-will for an indefinite period and the County or District and the employee are free to terminate employment with or without notice at any time for any reason").

**37.** *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (" 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty."); *cf. Town of Castle Rock v. Gonzales*, 545 U.S. 748, 764, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) (stating that "the seeking of an arrest warrant would be an entitlement to nothing but procedure—which we have held inadequate even to support standing; much less can it be the basis for a property interest" (citation omitted)); *id.* at 769, 125 S.Ct. 2796 (Souter, J., concurring) ("Just as a State cannot diminish

such procedures, without more, does not alter an employee's at-will status, thereby creating a property interest in continued employment. As our summary of the parties' arguments reflects, whether County employees may be dismissed only for cause is a close question. The County can rightly be faulted for not being clearer on the subject in the Manual. But as we stated in *Burwell,* a limitation on at-will employment "cannot simply be inferred." [38] On balance, we think that such a limitation in the Manual is more than an inference, and that the fair import of the Manual's provisions, taken as a whole, is that covered employees are not to be discharged without being given a reason they can contest. This expectation in continued employment except for just cause, while not a contract right, as the Manual expressly disavows, is nevertheless a property interest of which employees may not be deprived without due process.

### III

■ We agree with the lower courts that the deputies were discharged and that their employment did not simply terminate automatically when Constable Dupree took office. The County argues that a deputy constable's employment should end with the constable's term of office because by statute, "[t]he constable is responsible for the official acts of each deputy of the con-

stable", [39] and no constable should be required to retain a deputy in whom he does not have confidence. The argument would have more force but for the fact, as we have already noted, that the Legislature redefined the employees that a county could choose to afford civil service protection for the express purpose of including deputy constables. [40] The County argues that deputy constables should be treated like deputy sheriffs, who by statute serve at the pleasure of the sheriff. [41] But no such statute applies to deputy constables, and besides, deputy sheriffs may be afforded civil service protections in some counties. [42] The County relied on the court of appeals' decision in *Arrington,* but after the resulting change in the law to allow civil service protection to be extended to deputy constables, there is simply no merit to the County's position that the deputies were *not* discharged.

■ It follows that the deputies were entitled under the Manual to have a hearing on their grievances, and since they were denied such a hearing, they were denied procedural due process. "In general," as we stated in *University of Texas Medical School v. Than,* "the remedy for a denial of due process is due process." [43] In that case we determined that a medical student's due-process rights were violated by his exclusion from a portion of the evidentiary hearing on charges against him

---

a property right, once conferred, by attaching less than generous procedure to its deprivation, *[Loudermill],* neither does a State create a property right merely by ordaining beneficial procedure unconnected to some articulable substantive guarantee. This is not to say that state rules of executive procedure may not provide significant reasons to infer an articulable property right meant to be protected; but it is to say that we have not identified property with procedure as such. State rules of executive procedure, however important, may be nothing more than rules of executive procedure.").

**38.** 189 S.W.3d at 739.

**39.** TEX. LOC. GOV'T CODE § 86.011(c).

**40.** *Supra* notes 13–14 and accompanying text.

**41.** *Supra* note 6.

**42.** *Supra* note 12 and accompanying text.

**43.** 901 S.W.2d 926, 933 (Tex.1995) (citing *Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).

for academic dishonesty.[44] We held that he was entitled to a new hearing before any sanction could be imposed.[45]

The deputies argue that the absence of cause for their dismissal is simply undeniable. Had they been given the hearing on their grievances that the Manual promised them, they continue, the only possible result would have been reinstatement. By denying them procedural due process, the County deprived them of their jobs. Therefore, they assert, they are entitled to monetary damages for lost earnings and benefits and for mental anguish and emotional distress, in the past and in the future, "resulting from ... dismissal from ... employment", as charged to and found by the jury.

But in fact, whether there was cause to dismiss the deputies has never been established because the County has taken the position throughout that the deputies were never dismissed at all. The County has consistently contended that the deputies' terms of employment automatically expired when Constable Dupree took office and he refused to administer the oath of office to them. The hearing before the civil service commission was limited to that issue, and the deputies were not allowed to present their grievances that they had been dismissed without cause. The deputies argue that the County has admitted that no cause for their dismissal existed.

But the County was more careful in its admissions. Asked to "[a]dmit or deny that Plaintiffs were not terminated for any of the allowed reasons for termination as set forth in the [Manual]", the County responded: "Defendant admits the reason for the notice to Plaintiffs that they would not be sworn in as Deputy Constables by Michael Dupree was not one of the 'allowed reasons' under the [Manual]." Asked further to "[a]dmit or deny that you had no 'just cause' in dismissing Plaintiffs from their employment as deputy constables as that term is used in the [Manual]", the County responded: "Defendant admits that the decision not to swear in Plaintiffs was not based on 'just cause'." The County has not admitted that no just cause existed. The civil service commission believed that the existence of just cause for dismissal was irrelevant because the deputies had not been dismissed, based on the legal opinion of the District Attorney's office. Hence, it never formally inquired whether Dupree had reasons for not retaining the deputies, or what they were.[46]

■ The United States Supreme Court addressed a similar situation in *Carey v. Piphus*, which involved two public school students suspended without procedural due process, who then sued for damages under section 1983.[47] The district court concluded that the students failed to prove damages but were entitled to declaratory

44. *Id.* at 931–932.

45. *Id.* at 933–934.

46. The dissent argues that the County's responses do not meet the substance of the requests as required by Rule 198.2(b) of the Texas Rules of Civil Procedure. *Post* at 367. We disagree. To simply admit the requests as worded would have suggested that no just cause existed for discharging the deputies, and to deny the requests as worded would have suggested that just cause did exist, when in fact, the matter had never been explored.

The County's responses did not "hide its actual defense", as the dissent charges. The County's position was well known to the deputies and had been from the very beginning. The responses reflected the County's position accurately. Responding accurately to requests for admission is not merely allowed by the rules of procedure, it is required, and doing so is not, as the dissent unfairly charges, "gamesmanship". *Id.*

47. 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

relief and to expunction of the suspensions from their school records.[48] Nevertheless, the court dismissed the complaints without ordering declaratory relief.[49] The court of appeals reversed and remanded, holding that "non-punitive damages for the injury which is 'inherent in the nature of the wrong' are recoverable for a violation of the right to procedural due process".[50] The court added that "special damages for the school days plaintiffs lost as a result of their suspensions" should also be considered.[51] The Supreme Court disagreed that the students could recover substantial "non-punitive damages" absent *proof* of actual injury caused by the denial of due process.[52] Concerning damages from the suspensions, the Supreme Court explained:

> Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. . . .
>
> In this case, the Court of Appeals held that if petitioners can prove on remand that "[respondents] would have been suspended even if a proper hearing had been held," then respondents will not be entitled to recover damages to compensate them for injuries caused by the suspensions. The court thought that in such a case, the failure to accord procedural due process could not properly be viewed as the cause of the suspensions. The court suggested that in such circumstances, an award of damages for

injuries caused by the suspensions would constitute a windfall, rather than compensation, to respondents. We do not understand the parties to disagree with this conclusion. Nor do we.[53]

Importantly, the Supreme Court did not state that the students would be entitled to damages resulting from their suspensions if they could show they would not have been suspended had they been given a hearing. The Supreme Court said only that the students could not recover such damages if the school officials could show the students would still have been suspended had they been given a hearing. "[D]amages awards under § 1983," according to the Court, "should be governed by the principle of compensation"[54] (although it left open the possibility of punitive damages).[55]

■■■ The Court further held that the students could recover damages for mental and emotional distress, but only for any distress actually caused by not having been afforded appropriate procedural protections.[56] Absent evidence of such distress, the students were limited to nominal damages:

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be

---

**48.** *Id.* at 251–252, 98 S.Ct. 1042.

**49.** *Id.* at 252, 98 S.Ct. 1042.

**50.** *Piphus v. Carey*, 545 F.2d 30, 31 (7th Cir. 1976).

**51.** *Id.* at 32.

**52.** *Carey*, 435 U.S. at 248, 267, 98 S.Ct. 1042.

**53.** *Id.* at 259–260, 98 S.Ct. 1042 (footnote and citations omitted).

**54.** *Id.* at 257, 98 S.Ct. 1042.

**55.** *Id.* at 257 n. 11, 98 S.Ct. 1042 ("This is not to say that exemplary or punitive damages might not be awarded in a proper case under § 1983 with the specific purpose of deterring or punishing violations of constitutional rights.").

**56.** *Id.* at 263–264, 98 S.Ct. 1042.

observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners.[57]

*Carey* makes clear in the present case that if just cause existed for the deputies' dismissal, the County's refusal to give them a hearing on the issue could not have caused damages "resulting from ... dismissal from ... employment". We conclude that the existence of just cause has never been established. The deputies argued in their motion for partial summary judgment that it was undisputed the County "did not have a 'for cause' reason for terminating Plaintiffs ... much less substantial evidence" of such cause, pointing to the County's responses to two requests for admissions. But as we have explained, those responses do not support the deputies' argument. The summary judgment record did not establish either the nonexistence of just cause, or the nonexistence of evidence of just cause, for the deputies' dismissal. Nevertheless, while the trial court's order granting the motion is not entirely clear, it appears that the trial court agreed that the County had no just cause. In this respect, the partial sum-

mary judgment went too far. Had it held only that the deputies had been denied procedural due process and stopped there, the parties could have proceeded to offer evidence regarding the existence of just cause, and the deputies could have requested jury findings on that issue. To render judgment against the deputies now for the lack of a record on just cause would be to punish them for prevailing on their motion for partial summary judgment. The deputies should not suffer from the trial court's error in their favor.[58]

■ The deputies' recovery of damages "resulting from ... dismissal from ... employment" must therefore be reversed because it has not been shown on this record that these damages were caused by the County's denial of procedural due process. But the case must be remanded for the deputies to advance that contention if they choose to do so. If there was just cause to dismiss the deputies, the deputies can recover only damages directly resulting from the denial of a hearing, if any can be proved, or, absent such proof, nominal damages. Only if there was no just cause to dismiss the deputies can they recover the damages resulting from the dismissal.[59] We express no opinion on how the burden of proof of just cause for dismissal should be assigned.[60]

**57.** *Id.* at 266–267, 98 S.Ct. 1042 (citations omitted).

**58.** *See Elder Constr. v. City of Colleyville,* 839 S.W.2d 91, 92 (Tex.1992) (per curiam) ("[W]e do not agree that the trial court was authorized to determine prior to trial that certain issues were established as a matter of law, conduct the trial on that basis, and then withdraw its ruling without affording the parties a fair opportunity to present to the jury their positions on issues no longer taken to be established.").

**59.** We do not consider whether there are any other limitations on the type of damages that may be awarded. *See, e.g., Hill v. Pontotoc,* 993 F.2d 422, 426 (5th Cir.1993) (noting that some courts have held that "front pay" is not an "appropriate remed[y] for a purely procedural due process violation").

**60.** We note that the Fifth and the Eighth Circuits have opined that "the public employer carries the burden of proving that the plaintiff would have been fired even if procedural due process had been observed." *Brewer v. Chauvin,* 938 F.2d 860, 864 (8th Cir.

Because we reverse the damages award, we also reverse the award of attorney fees. In the event that only nominal damages are awarded, we cannot say with certainty that attorney fees would be improper, though nominal damages ordinarily will not support attorney fees.[61]

## IV

The deputies contend that their property interest in continued employment is protected by substantive due process under the Fourteenth Amendment.[62] The United States Supreme Court has never decided the precise issue, although it has come close. In *Harrah Independent School District v. Martin,* a tenured public school teacher discharged for her refusal

---

1991); *see also Hill,* 993 F.2d at 425–426 (5th Cir.1993) ("An employer may defend a denial of due process with proof that the employee would in any event have been fired.... The district court here erroneously placed the burden of proof on causation on the plaintiff ...."); *cf. Alexander v. Polk,* 750 F.2d 250, 259–261, 263–264 (3d Cir.1984) (holding that, where there was a statutory violation in the removal of plaintiffs from the Supplemental Food Program for Women, Infants, and Children without the proper hearings, the defendant had the burden of proving that the plaintiffs would not have prevailed even if the proper hearings had been held, reasoning that "the Supreme Court [in *Carey]* approved at least implicitly the Seventh Circuit's holding that the burden of showing that the plaintiffs would not have prevailed is on the defendants"). The Second Circuit, however, has stated that the burden to show that termination was the result of a due process denial "is normally on the plaintiff", recognizing "a limited exception, under truly extraordinary circumstances: if the defendant prevents the plaintiff from obtaining access to evidence, and thereby makes it impossible for the plaintiff to carry the burden of proof". *Miner v. City of Glens Falls,* 999 F.2d 655, 660 (2d Cir.1993).

**61.** *Farrar v. Hobby,* 506 U.S. 103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ("'In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party. As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his "absolute" right to procedural due process through enforcement of a judgment against

the defendant. In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury. Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action "must always be designed 'to *compensate injuries* caused by the [constitutional] deprivation.'" When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.... [F]ee awards under § 1988 were never intended to " 'produce windfalls to attorneys ....' " (citations omitted)).

**62.** The deputies included this claim in their motion for partial summary judgment, which the trial court granted. The County did not argue in response or in its own motion for summary judgment, as it has on appeal, that government employment is not protected by substantive due process. The dissent asserts that the County's failure to make this argument in its motion forecloses the argument on appeal. *Post* at 362. The deputies have never made this assertion; rather, they and the County have argued the issue thoroughly in the court of appeals and this Court. The dissent's assertion is puzzling, given the solid authority to the contrary. "While it would be prudent and helpful to the trial court for the non-movant always to file an answer or response [to a motion for summary judgment], the non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient *as a matter of law* to support summary judgment." *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *accord Rhône–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *M.D. Anderson Hosp. & Tu-*

to comply with continuing education requirements claimed that she had been denied substantive due process in violation of the Fourteenth Amendment.[63] Concluding that the school board's actions could "scarcely be described as arbitrary", the Supreme Court held that the claim was "wholly untenable".[64] But it also noted that the teacher had made no claim that the interest she asserted "was anything resembling 'the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life'" protected by substantive due process.[65]

Justice Powell's concurrence in *Regents of the University of Michigan v. Ewing* is often cited as authoritative on the matter:

Even if one assumes the existence of a property right ... not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution.

The history of substantive due process "counsels caution and restraint." The determination that a substantive due process right exists is a judgment that " 'certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment.'" In the context of liberty interests, this Court has been careful to examine each asserted interest to determine whether it "merits" the protection of substantive due process. "Each new claim to [sub-

stantive due process] protection must be considered against a background of Constitutional purposes, as they have been rationally perceived and historically developed."

The interest asserted by respondent [in continued university enrollment] is essentially a state-law contract right. It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution. It certainly is not closely tied to "respect for the teachings of history, solid recognition of the basic values that underlie our society, and wise appreciation of the great roles that the doctrines of federalism and separation of powers have played in establishing and preserving American freedoms[.]" ... For these reasons, briefly summarized, I do not think the fact that Michigan may have labeled this interest "property" entitles it to join those other, far more important interests that have heretofore been accorded the protection of substantive due process.[66]

The United States Court of Appeals for the Third Circuit has recently held that government employment is not protected by substantive due process. In *Nicholas v. Pennsylvania State University*,[67] in an opinion authored by then-Judge (now Justice) Alito, the court began by emphasizing the distinction between legislative acts— "generally laws and broad executive regulations [that] apply to large segments of society"—and executive acts—"such as employment decisions [that] typically apply to one person or to a limited number of

*mor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).

**63.** 440 U.S. 194, 195–196, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (per curiam).

**64.** *Id.* at 199, 99 S.Ct. 1062.

**65.** *Id.* at 198, 99 S.Ct. 1062.

**66.** 474 U.S. 214, 229–230, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring) (citations omitted).

**67.** 227 F.3d 133 (2000).

persons".[68]   After reciting Justice Powell's *Ewing* concurrence and reviewing its own jurisprudence, the court stated:

> To summarize: when a plaintiff challenges the validity of a legislative act, substantive due process typically demands that the act be rationally related to some legitimate government purpose. In contrast, when a plaintiff challenges a non-legislative state action (such as an adverse employment decision), we must look, as a threshold matter, to whether the property interest being deprived is "fundamental" under the Constitution. If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used.   If the interest is not "fundamental," however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process.[69]

Turning to the specific interest claimed by Dr. Nicholas in his tenured professorship at Pennsylvania State University, the court concluded:

> [T]enured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution. . . . "[I]t cannot be reasonably maintained that public employment is a property interest that is deeply rooted in the Nation's history and traditions." Nor does public employment approach the interests " 'implicit in the concept of ordered liberty like personal choice in matters of marriage and family.' "   Accordingly, we view public employment as more closely analogous to those state-created property interests that this Court has previous deemed unworthy of substantive due process. . . . [70]

In so doing, the court noted that it had "join[ed] the great majority of courts of appeals that have addressed this issue." [71] The court added that its view also comports with the Supreme Court's admonition that the federal judiciary should not become a general court of review for state employment decisions:

> The federal court is not the appropriate forum in which to review the multitude

68.   *Id.* at 139 n. 1.

69.   *Id.* at 142.

70.   *Id.* at 143 (citations omitted).

71.   *Id.* at 142–143 (citing *Singleton v. Cecil*, 176 F.3d 419, 425–426 (8th Cir.1999) (en banc) ("a public employee's interest in continued employment with a governmental employer is not so 'fundamental' as to be protected by substantive due process"); *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir.1994) (en banc) ("employment rights are not 'fundamental' rights created by the Constitution"); *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir.1992) ("plaintiffs' state-created right to tenured employment lacks substantive due process protection"); *Huang v. Bd. of Governors of Univ. of N. C.*, 902 F.2d 1134, 1142 n. 10 (4th Cir.1990) (professor's interest in position in university department "is essentially a state law contract right, not a fundamental interest embodied in the Constitution"); *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir.1994) ("We do not think, however, that simple, state-law contractual rights, without more, are worthy of substantive due process protection."); *Kauth v. Hartford Ins. Co. of Ill.*, 852 F.2d 951, 958 (7th Cir.1988) ("In cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest . . . the plaintiff has not stated a substantive due process claim."); *Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir.1989) (finding "no clearly established constitutional right to substantive due process protection of continued public employment" in Ninth Circuit as of 1984)).

of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error.... The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.[72]

■ We agree with the Third Circuit in *Nicholas* and can add nothing to its reasoning. The court noted that the First Circuit had reached the contrary conclusion,[73] and we think the Fifth Circuit has, too. In *Russell v. Harrison*, a 1984 decision predating Justice Powell's *Ewing* concurrence, the Fifth Circuit held that a complaint by public university employees that their employment contracts had been terminated before they expired pleaded a substantive due process claim.[74] Although the court's opinion offered no analysis or reasoning, the Fifth Circuit has never revisited its conclusion,[75] though it has occasionally indicated that the issue might be something less than settled.[76] We think *Nicholas* has the better of the argument. Accordingly, we conclude that the deputies have no interest in continued employment protected by substantive due process.

■ Even if such an interest were protected, the United States Supreme Court has firmly held that executive actions—which individual employment decisions are—violate substantive due process only if they are wholly arbitrary:

We have emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government"....

Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be "arbitrary in the constitutional sense"....

To this end, for half a century now we have spoken of the cognizable level of

---

72. *Id.* at 143 (quoting *Bishop v. Wood*, 426 U.S. 341, 359–360, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

73. *Id.* at 143 (citing *Newman v. Mass.*, 884 F.2d 19, 25 (1st Cir.1989) ("school authorities who make an arbitrary and capricious decision significantly affecting a tenured teacher's employment status are liable for a substantive due process violation")).

74. 736 F.2d 283, 288 (5th Cir.1984).

75. *See Schaper v. City of Huntsville*, 813 F.2d 709, 717 (5th Cir.1987) ("In *Russell v. Harrison*, this court found that a complaint alleging an arbitrary and capricious deprivation of a property interest states a cause of action under the Due Process Clause. Other circuits, however, have disagreed about the availability of substantive due process review when plaintiffs allege deprivations of state conferred property rights. Following the law of this circuit, we hold that Schaper has a substantive due process right in continued employ-

ment." (citations and footnote omitted)); *Honore v. Douglas*, 833 F.2d 565, 568 (5th Cir.1987) (citing *Schaper*); *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir.1993) (citing *Honore*); *Peterson v. Wilson*, 141 F.3d 573, 580 (5th Cir.1998) (arbitrary and capricious firing of university employee violated substantive due process); *but cf. Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505 (5th Cir.2006) ("To establish a substantive due process violation, a plaintiff must first both carefully describe that right and establish it as 'deeply rooted in this Nation's history and tradition.' ").

76. *Texas v. Walker*, 142 F.3d 813, 818 (5th Cir.1998) ("*Moulton* exaggerated the status of a substantive due process claim for academic protection, however, because the Supreme Court has not squarely decided the issue." (citing *Ewing*, 474 U.S. at 220–223, 106 S.Ct. 507)); *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir.1992) ("In *[Honore]*, this court acknowledged the *possibility* of a substantive due process claim to tenure ...." (emphasis added)).

executive abuse of power as that which shocks the conscience.[77]

The County believed, based on legal advice and the court of appeals' opinion in *Arrington*, that the deputies' terms had automatically expired. The County was in error about the legal effect of the expiration of a constable's term of office, but its decisions were nevertheless reasoned and reasonable. They were certainly not arbitrary, nor did they remotely approach the conscience-shocking required for a substantive due process violation.

\* \* \*

The judgment of the court of appeals is reversed, and the case is remanded to the trial court for further proceedings.

Justice BRISTER, joined by Chief Justice JEFFERSON, Justice O'NEILL, and Justice MEDINA, concurring in part and dissenting in part.

Justice BRISTER, joined by Chief Justice JEFFERSON, Justice O'NEILL, and Justice MEDINA, concurring in part and dissenting in part.

Even governments should be careful what they ask for. After a Dallas district court held that Dallas County deputy constables were at-will employees, Dallas legislators obtained passage of a state law and Dallas County officials adopted a new code extending civil-service protection to them. But when three deputies were discharged in 2001, the County insisted they

were still at-will employees, despite all its efforts to the contrary.

Dallas County should be held to its word. If the County wants deputy constables to be terminable-at-will, it must say so, as it did by amending its civil service code to drop them again in 2003.[1] But we cannot amend that code as it stood in 2001, and should not allow the County to pretend that changing the code one way and then back again meant nothing in the interim.

Because the deputies sought and obtained damages far beyond their wages, I agree we must remand for a new trial. But it should be only on that issue; I disagree that the County should have a second chance to deny them everything. To the extent the Court does so, I respectfully dissent.

## I. Background

The Court begins by noting the general rule that employment in Texas is at-will. But it passes lightly over Dallas County's extensive efforts to ensure this was *not* the rule for its deputy constables.

Historically, civil service systems in Texas did not apply to employees who performed governmental functions in their own right.[2] For precisely that reason, Dallas trial and appellate courts dismissed a civil service claim in the late 1980s by a Dallas County deputy constable, Floyd Arrington.[3]

---

**77.** *County of Sacramento v. Lewis*, 523 U.S. 833, 845–846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

**1.** *See* Order Amending Policy Manual, Order No.2003–1467 (Dallas County Comm'rs Ct. Aug. 19, 2003) (reclassifying deputy constables as "Category A" employees not covered by civil service rules).

**2.** *See* Act of May 19, 1971, 62nd Leg., R.S., ch. 262, § 1, 1971 Tex. Gen. Laws 1151 (current version at TEX. LOC. GOV'T CODE § 158.001(2)); *Green v. Stewart*, 516 S.W.2d 133, 135–36 (Tex.1974) (holding tax assessor-collector was not covered by civil service, but his deputies were, as only the former acted in his own right).

**3.** *Arrington v. County of Dallas*, 792 S.W.2d 468, 471 (Tex.App.-Dallas 1990, writ denied).

In response to that case, Dallas legislators introduced a bill whose express purpose was to grant civil service protection to deputy constables.[4] Dallas County officials appeared at committee hearings to support the bill.[5] The bill passed, and became effective September 1, 1989.[6] Dallas County Commissioners then amended their civil-service system to add deputy constables—the only employees specifically named by ordinance as protected employees.[7]

In November 2000, Mike Dupree was elected Dallas County Constable, Precinct 6, defeating the incumbent constable in the Democratic primary and a Republican challenger in the general election. Before he took office, the constable-elect sent letters to deputy constables Stanley Gaines, James Gilliand, and Sonia Avina informing them they would not be reappointed in January. When they were denied a civil service hearing on this discharge, they filed suit.

## II. Property Interest

The primary dispute between the parties is whether the deputies had a property interest in continued employment. I agree with the Court that they do. But I do not find it a "close question." [8]

Public employees have a property interest in continued employment if the government has agreed to fire them only "for cause." [9] That question turns on an analysis of the County's civil service rules.[10]

4. Hearings on S.B. 1006 Before the House County Affairs Comm'n, 71 st Leg., R.S. (May 9, 1989) (statement of Rep. Steve Wolens) ("So simply what this bill does is it makes the deputy constables subject to the civil service act, and in doing so it takes care of two things. Number one, it protects deputy constables from being fired for political reasons, and secondly it will benefit the county as it delineates when a deputy constable can be fired and what those proper procedures are for firing a deputy constable.") (tape available from House Audio/Video Services); Hearings on S.B. 1006 Before the Senate Intergovernmental Relations Comm'n, 71st Leg., R.S. (Apr. 4, 1989) (statement of Sen. Eddie Bernice Johnson) ("This legislation simply provides for deputy constables to come into the civil service of the county civil service program.") (transcript available from Senate Staff Services); see also Op. Tex. Att'y Gen. No. 97–016 (1997) (noting that section 158.009 was amended "for the express purpose of allowing counties to include deputy constables within their civil service systems").

5. Hearings on S.B. 1006 Before the House County Affairs Comm'n, 71st Leg., R.S. (May 9, 1989); Hearings on S.B. 1006 Before the Senate Intergovernmental Relations Comm'n, 71st Leg., R.S. (Apr. 4, 1989).

6. Act of June 14, 1989, 71st Leg., R.S., ch. 881 § 3, 1989 Tex. Gen. Laws 3879, eff. Sept. 1, 1989 (current version at TEX. LOC. GOV'T CODE §§ 158.001(2), 158.009).

7. See Order Amending Policy Manual, Order No. 90–1567 (Dallas County Comm'rs Ct. Sept. 18, 1990) (adding to definition of covered employees "The term includes deputy constables."); DALLAS COUNTY ADMIN. POLICIES & PROCEDURES MANUAL §§ A 1.03, 2.00–2.01 (Aug.2000) (hereinafter MANUAL) (current version at DALLAS COUNTY CODE § 86–1).

8. County of Dallas v. Wiland, 124 S.W.3d. 390, 396 (Tex.App.—Dallas 2004).

9. Gilbert v. Homar, 520 U.S. 924, 928–29, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); City of Odessa v. Barton, 967 S.W.2d 834, 835 (Tex.1998); Bexar County Sheriff's Civil Serv. Comm'n v. Davis, 802 S.W.2d 659, 661 n. 2 (Tex.1990).

10. See Bishop v. Wood, 426 U.S. 341, 344–45, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) ("A property interest in employment can, of course, be created by ordinance.... Whether such a guarantee has been given can be determined only by an examination of the particular statute or ordinance in question.").

In the Manual containing those rules, the chapter entitled "Dismissals" has six sections: five relate solely to procedures, and the sixth (§ 4.21) states that employees may be dismissed "for just cause." The Manual mentions no other kind of dismissal. Of the eight grounds for termination listed in § 4.21, seven constitute just cause, and the eighth (a general catch-all provision) must be construed consistently with the preceding seven.[11] If (as the County argues) employees can be fired at will, we must add something that is not in the code, and render superfluous an entire section that is.[12]

While the Manual does not say employees can be dismissed *only* for cause, the context here does not allow us to presume otherwise. The general rule in a civil service system is not that employment is at-will, but that it is whatever the system's rules say.[13] The County admitted as much.[14] Thus, the presumption is not that employees can be fired at will, but that they can be fired for whatever reasons the

rules state. The rules here list no ground for dismissal other than for just cause.

The disclaimer printed in the front of the Manual does not change this result. First, nothing shows the County ever adopted this disclaimer; it is the only part of the Manual in our record without an order number and date showing when it was adopted. This is not a matter of authenticity, but of validity. Further, the disclaimer states only that employees have no contract rights; but employees with no contract rights can still have a property interest protected by due process.[15]

Nor are the deputies' claims barred by the four-year term accorded constables in the Texas Constitution.[16] Due-process jurisprudence makes no distinction between nonrenewal and termination—employees may have a property interest in continued employment in either case.[17] As one of the primary purposes of civil service is to prevent wholesale dismissals after every election, implying a term limit would frustrate that very purpose.

---

**11.** *Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex.2003) ("[T]he rule of *ejusdem generis* ... provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation.").

**12.** *Cf. City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex.2003) ("It is an elementary rule of construction that, when possible to do so, effect must be given to every sentence, clause, and word of a statute so that no part thereof be rendered superfluous.").

**13.** *See* TEX. LOC. GOV'T CODE § 158.009(5); *Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 420 (Tex.1993) (holding that statute requiring preestablished reasons for termination of teacher's contract limited termination to those reasons), *superceded by statute as stated in Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 29 (Tex.App.-Austin 1999, no pet.).

**14.** The County's Response to Request for Admission No. 4 stated: "Defendant admits 'dismissal' of employees by Dallas County Civil Service in December 2000 could only be according to the Administration Policy and Procedures Manual."

**15.** *See Grounds*, 856 S.W.2d at 420 n. 2 ("This property interest exists despite the fact that a teacher has no contractual right to reemployment.") (citing *Perry v. Sindermann*, 408 U.S. at 595, 601, 92 S.Ct. 2694 (1972)).

**16.** TEX. CONST. art. V, § 18(a).

**17.** *See, e.g., Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 195, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979); *Perry v. Sindermann*, 408 U.S. 593, 595, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Nothing in the Constitution or state law required Dallas County to grant civil service protection to deputy constables. But once the County did—and there is no question about that—the County could not impose term limits or termination grounds that were not listed in its civil service rules.

## III. Damages

Section 1983 creates "a species of tort liability" in which "the level of damages is ordinarily determined according to principles derived from the common law of torts."[18] I concede the common law of torts probably would not allow all the damages the jury awarded here. Dallas County never guaranteed that deputies could work extra jobs,[19] so they had no property interest in off-duty income that the County should repay. Further, the court of appeals' review of mental anguish damages did not address many of the factors both state and federal courts normally consider.[20]

But the deputies proved they were fired without just cause and thus are entitled to lost wages for both substantive and procedural due process violations. To invalidate their wage claims, the County must elimi-

nate both grounds. The Court assists the County by eliminating the substantive due process claim on a ground the County never raised before trial, and giving the County a second chance to eliminate the procedural due process claim on a ground that was never raised at all.

### A. Substantive Due Process

The Court concludes that public employees have no substantive due-process rights. But the County failed to preserve such an argument in the trial court.

Whether the County violated section 1983 was decided on cross-motions for summary judgment. If the County wanted to defend on the ground that public employees have no substantive due-process rights, that should have been included in its motion.[21] It was not. Instead, the County defended this case on the sole ground that the deputies' terms ended with the outgoing constable. Having lost on that issue, the Court is wrong to allow the County to win on a different ground.

The argument that public employees have no substantive due-process rights first surfaced in the County's second supplemental motion for new trial—after the summary judgment, after a jury trial on

---

18. *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 305–06, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (quoting *Carey v. Piphus,* 435 U.S. 247, 257–58, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)).

19. *See* TEX. LOC. GOV'T CODE § 158.009(a)(8) (allowing county civil service systems to prescribe "working conditions of county employees."); MANUAL, §§ C(8.06–8.09); Ord. No.2003–1373, 8–5–2003) (requiring supervisory approval for such work, and prohibiting after-hours work "that conflicts with the county's interest or public image or that adversely affects his availability and usefulness as an employee to the county"). Although employees could file a grievance if a supervisor's approval was "unreasonably withheld," these provisions leave too much

discretion to constitute a property interest. *See Castle Rock,* 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

20. *See Brady v. Fort Bend County,* 145 F.3d 691, 718–19 (5th Cir.1998); *Price v. City of Charlotte,* 93 F.3d 1241, 1254 (4th Cir.1996); *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 54 (Tex.1997); *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444–45 (Tex.1995).

21. TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

damages, and two months after the final judgment. The deputies objected to the late addition of this argument, the trial court struck it, and the County does not assert error as to that ruling. Accordingly, we cannot possibly reverse on this ground.

Moreover, while several federal circuits have denied substantive due-process rights for public employees,[22] the Fifth Circuit has repeatedly held to the contrary,[23] and the Supreme Court has yet to say one way or the other.[24] If today's conclusion is wrong—if the Supreme Court ultimately holds that public employees have substantive due process rights—then the deputies may be deprived of constitutional rights not just by the County but by this Court's haste to decide an issue that was not preserved.

### B. Procedural Due Process

The Court says the deputies were deprived of only a hearing, not their jobs. But the record here is unequivocal that they were deprived of both.

The Court recognizes that deputies could be discharged only for cause. There is no evidence in this record that they were. Indeed, it is hard to see how that could be possible, as they were discharged by a constable-elect who had not yet taken office. Nor was this a matter of budgetary constraints, as several new deputies were appointed to take their places. On this record, had the deputies gotten a hearing six years ago, the County would have been *required* to reinstate them. By depriving the deputies of a hearing, the County deprived them of their jobs too.

The Court concedes the deputies were entitled to lost wages if they could prove there was no just cause for their dismissal. But the Court says they did not prove that, despite the County's response to the following request for admission:

> **Request No. 6:** Admit or deny that you had no "just cause" in dismissing Plaintiffs from their employment as deputy constables as that term is used in the Dallas County Administration Policy and Procedure Manual.

> **Response:** Defendant admits that the decision not to swear in Plaintiffs was not based on "just cause".

The Court reads this response to say: "The existence of just cause has never been established."[25] That, of course, is not what it says. The County does not even *assert* such a meaning—the Court's reading is created from whole cloth without any support in the County's extensive

**22.** *See, e.g., Am. Fed'n of Gov't Employees v. U.S.,* 330 F.3d 513, 523 (D.C.Cir.2003); *Singleton v. Cecil,* 176 F.3d 419, 420 (8th Cir. 1999); *McKinney v. Pate,* 20 F.3d 1550, 1560 (11th Cir.1994) (en banc); *Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1350–51 (6th Cir.1992); *Newman v. Massachusetts,* 884 F.2d 19, 25 (1st Cir.1989).

**23.** *See, e.g., Finch v. Fort Bend Indep. Sch. Dist.,* 333 F.3d 555, 562–63 (5th Cir.2003); *Texas v. Walker,* 142 F.3d 813, 818 (5th Cir. 1998); *Harrington v. Harris,* 118 F.3d 359, 368 (5th Cir.1997); *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993); *Schaper v. City of Huntsville,* 813 F.2d 709, 717 (5th Cir.1987).

**24.** *See, e.g., Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring); *Harrah Indep. Sch. Dist. v. Martin,* 440 U.S. 194, 198–99, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (rejecting substantive due-process claim because nonrenewal of tenured teacher's contract was not arbitrary).

**25.** 216 S.W.3d at 357; *see also Brewer v. Chauvin,* 938 F.2d 860, 864 (8th Cir.1991) (holding that § 1983 award should "include a full award of back pay only when there is a finding that the discharge would not have occurred if the employee's procedural due process rights had been observed").

briefs. Moreover, this reading assumes the County gave an answer specifically prohibited by Rule 198.2: "An assertion that the request presents an issue for trial is not a proper response." [26]

Under the Texas Rules of Civil Procedure, a party must "specifically admit or deny" a request for admission, and its response "must fairly meet the substance of the request." [27] The substance of the Plaintiffs' request was not whether the County's decision was *based* on just cause, but whether the County *had* any just cause—even if its decision was based on something else. By assuming the County was "careful" to hide its actual defense by rephrasing the question, the Court encourages precisely the kind of gamesmanship the rules of procedure prohibit.[28]

If the County wanted to defend on the theory that the deputies would have been fired anyway (for some unspecified just cause), that ground should have been disclosed in discovery and included in its motion for summary judgment. Because it was not, the County should not get a second chance to prove a defense it never asserted.

As the County conceded and the record discloses these employees would have kept their jobs had they received a proper hearing, they are entitled to wages lost as a result.

## IV. Conclusion

Dallas County did not have to guarantee its deputy constables continued employment. It did not have to react to Floyd Arrington's case by giving deputies civil service protection, or react to the $2 million judgment here by revoking it. But there is no question that it did, and that these deputies had civil service protection when they were terminated without just cause in 2001.

Dallas County could have changed its civil service system before terminating these deputies; or it could have proved they were terminated for just cause; or barring that, the County could have reinstated the deputies before large damages accrued.[29] The County did none of these, and so ought to be held accountable. I respectfully dissent to the Court's judgment granting it a second chance to escape liability.

**26.** TEX. R. CIV. P. 198.2(b).

**27.** *Id.*

**28.** TEX. R. CIV. P. 193.1 ("When responding to written discovery, a party must make a complete response, based on all information reasonably available to the responding party or its attorney at the time the response is made.").

**29.** *See Brady v. Fort Bend County,* 145 F.3d 691, 702 (5th Cir.1998) (noting that county could have avoided liability for sheriff's unconstitutional termination of deputies by adopting a civil service system).