In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-00529-CV


____________________



JEFF GREENWAY, Appellant



V.



LARRY ROCCAFORTE, Appellee 


 




On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-177,131






MEMORANDUM OPINION



 In this employment case, appellee Larry Roccaforte sued appellant Jeff Greenway for,
among other things, allegedly depriving him of liberty and property interests without due
process of law. See 42 U.S.C. § 1983 (creating a cause of action for any person who has
been deprived of a federal right by a person acting under color of state law). After a jury
trial, the trial court signed a judgment awarding $69,425 to Roccaforte for deprivation of his
liberty interest, as well as costs of $4,518.37 and attorney's fees of $86,600. Greenway
appeals the trial court's denial of his motion for judgment non obstante veredicto ("JNOV")
as to Roccaforte's claim for deprivation of a liberty interest without due process of law. By
cross point, Roccaforte appeals the granting of a JNOV in favor of Greenway as to
Roccaforte's claim for deprivation of a property interest. We affirm in part and reverse and
render in part.

Background


 Greenway, a Jefferson County constable, testified that Roccaforte became a deputy
constable during the term of the constable who preceded Greenway. Greenway hired another
deputy constable, Robert Adams, in January of 1997. Greenway subsequently appointed
Roccaforte as his chief deputy in approximately 2001. Greenway explained that the terms
and conditions of his deputy constables' employment are governed by Jefferson County's
Personnel Policies and Practices, and the deputy constables were also under a contract
through January 6, 2006.

 According to Greenway, after Hurricane Rita struck the Beaumont area in September
of 2005, Roccaforte failed to report to Greenway or anyone in Greenway's office for twelve 
days. Greenway explained that he eventually called Roccaforte's cell phone, and Roccaforte
came to Greenway's house. Greenway asked Roccaforte where he had been, and Roccaforte
stated he had been back since the day after the hurricane struck. Greenway testified that
when he asked Roccaforte why Roccaforte did not contact him, Roccaforte responded, "'It's
been kind of hectic[,]'" and that he "really didn't think about" calling Greenway. Greenway
told Roccaforte that his excuse was very poor, and he informed Roccaforte that his failure
to contact Greenway "'shows that you have absolutely no care about me, you have no care
about anybody in this office, to not check on them after a major disaster and here you are a
supervisor.'" Greenway stated that Roccaforte never told him that he had been driving and
patrolling, nor did Roccaforte offer the names of anyone with whom he had been working.

 On October 10, Greenway informed Roccaforte that Roccaforte was being demoted. 
A few days later, another deputy constable, Deputy Golmon, had lunch with Roccaforte and
Roccaforte's wife Sharon at a restaurant. During the meal, Sharon made a comment about
Greenway, and Golmon subsequently called Greenway and told him what Sharon had said. 
According to Greenway, Golmon told him that Sharon said, "'That sorry son-of-a-bitch
doesn't know who he's messing with.'" The following day, Greenway contacted Roccaforte
and told him he did not appreciate Sharon's public comments about him and asked
Roccaforte to put a stop to the comments. Greenway admitted that when his deposition was
taken, he did not include the phrase "that son-of-a-bitch" when he described what Golmon
told him Sharon had said, but instead had testified that Sharon said "[Jeff Greenway] does
not know who he's messing with." At trial, Greenway testified that Sharon could "rant and
rave all day at home but not out in public about me."

 Greenway testified that on January 4, 2006, he left his office at approximately 3:30
p.m., and when he drove past Roccaforte's home, he saw Roccaforte's county vehicle in the
driveway. Greenway turned around and positioned his vehicle so that he could observe
Roccaforte's garage, and he waited there until after five o'clock. Later that day, Greenway
called Adams and asked him to surveil Roccaforte's home beginning at seven o'clock a.m.
the following morning, and "to observe his coming and going and report back to me." At
about 10:30 a.m. on January 5, 2006, Adams called Greenway and informed him that
Roccaforte's car was still in the garage, and the garage door was down. Greenway did not
hear from Adams again until 1:53 p.m., when Adams lost sight of Roccaforte on Twin City
Highway. Greenway instructed Adams "to come in and write a report" about his
observations. When asked about a certified copy of a citation purportedly served by
Roccaforte at 9:00 a.m. on January 5, 2006, Greenway opined that Roccaforte could not have
served the citation "unless he slipped out the back window and did it on foot." Greenway
opined that Roccaforte had forged the citation.

 On January 6, 2006, Greenway called Roccaforte into the office, told him what Adams
had observed, and confronted him. Roccaforte told Greenway he was mistaken, and that he
had not been in his home. Greenway ultimately terminated Roccaforte's employment, and
he promoted Adams to the position of chief deputy constable.

 In a letter to TALX Employer Services, Greenway stated, "While on probation for
incompetent behavior after a major storm, Larry Roccaforte took time off the job without
authorization and falsified times on a legal document." Greenway testified that he had
written the letter to respond to an inquiry from TALX, at the instruction of Jefferson County
Human Resources. On an F-5 report required by TCLEOSE (Texas Commission on Law
Enforcement Officer Standards and Education), Greenway indicated that Roccaforte had
been dishonorably discharged, and that he was terminated "for a violation of law or
department policy or for other substantial misconduct." Greenway testified that in June of
2001, he had placed a letter in Roccaforte's file because Roccaforte "had an affair on county
time, in a county vehicle, out of our precinct." In addition, Greenway testified that in 2002,
he received a call from the director of the Texas Justice Court Training Center concerning
a possible sexual harassment complaint against Roccaforte, but no formal charges were
ultimately brought against Roccaforte. Greenway also testified that in November of 2004,
he had put into Roccaforte's file another document concerning a citizen's complaint about
a threat Roccaforte allegedly made to noisy students at a football game.

 Greenway testified that when he hires employees, he informs them that he will respect
and protect their rights, and he will not fire them unless there is a genuine reason to do so. 
Greenway testified that as an elected official, he alone makes hiring and firing decisions. 
Greenway further explained,

 I would never let somebody go just for any reason. I was told that I could
when I first came into this business, that I was an at-will employer, that you
can hire and fire for any reason whatsoever. I would . . . never do that. . . . So,
in . . . essence, I would never treat somebody else that way. . . . [I]f it wasn't
for a justifiable cause, I would not fire anyone."


 Thomas McDonald, the district manager of the Jefferson County Water Control
Improvement District No. 10, testified that he has known Roccaforte for several years, and
Roccaforte is honest and trustworthy. McDonald testified that when he returned after
Hurricane Rita, Roccaforte was already back, and McDonald saw Roccaforte working to
secure generators, patrolling the area, and assisting the firemen with cleaning debris from the
roads. Kevin Moore, the manager of Emergency Vehicle Equipment Company, testified that
on January 5, 2006, the day before Roccaforte was terminated, Roccaforte was at Moore's
shop installing lights on his county vehicle.

 Roccaforte testified that when he returned after Hurricane Rita, he contacted the
Nederland Police Department and the sheriff's department to inform them that he was
available to offer assistance. Roccaforte also testified that he assisted at the water district. 
According to Roccaforte, he did not speak to Greenway until several days after the storm
because he was busy working. Greenway ultimately called Roccaforte into his office, told
Roccaforte that he was disappointed by Roccaforte's failure to contact him, and informed
Roccaforte that he was demoting him. Roccaforte testified that he told Greenway about the
work he had been doing in the aftermath of the hurricane. Roccaforte testified that Greenway
had told him and the other employees that "no disciplinary action would be taken against us
unless there was just cause for such action." According to Roccaforte, his contract with the
county specified that no disciplinary action or termination would occur without just cause. (1) 
Roccaforte denied forging a citation or otherwise violating the law or office policy.

 Roccaforte testified that after his termination, he applied for a position with the
Jefferson County Sheriff's Department, but he was not hired. In addition, Roccaforte
testified that he also unsuccessfully applied for positions with Nederland Police Department,
Liberty Police Department, Liberty Sheriff's Department, and the Precinct Eight Constable's
Office in Jefferson County.

 The jury found that Greenway deprived Roccaforte of both a property interest and a
liberty interest without due process of law, and that the violations of Roccaforte's
constitutional rights proximately caused Roccaforte to suffer damages. The jury awarded
Roccaforte $56,500 for deprivation of his property interest, $69,425 for deprivation of his
liberty interest, and $325 for retaliation because of Sharon's comment about Greenway. 
Greenway filed a motion for JNOV, in which he asserted, inter alia, that Roccaforte had no
protected property interest, and that there was no evidence that Roccaforte was deprived of
a liberty interest without due process of law. The trial court denied Greenway's motion for
JNOV as to Roccaforte's claim concerning deprivation of a liberty interest without due
process of law, but granted Greenway's motion for JNOV as to Roccaforte's claim regarding
deprivation of a property interest.

Denial of JNOV as to Claim for Deprivation of Liberty Interest


 In his sole issue on appeal, Greenway appeals the denial of his motion for JNOV as
to Roccaforte's claim for deprivation of a liberty interest without due process. Specifically,
Greenway argues that there was no evidence of "a deliberate publication of stigmatizing
charges against the Plaintiff that caused a loss of other employment opportunities[.]"

 A JNOV is authorized when the pleadings or the evidence do not warrant submission
of issues to the jury. See Rowland v. City of Corpus Christi, 620 S.W.2d 930, 932-33 (Tex.
Civ. App.--Corpus Christi 1981, writ ref'd n.r.e.). A JNOV is proper only if a directed
verdict would have been proper. Tex. R. Civ. P. 301; Fort Bend County Drainage Dist. v.
Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991). A JNOV is proper if there is no evidence to
support the jury's finding. Tiller v. McLure, 121 S.W.3d 709, 713 (Tex. 2003). In reviewing
a legal sufficiency complaint raised in a motion for JNOV, we must consider the evidence
in the light most favorable to the verdict, crediting any favorable evidence if a reasonable
jury could and disregarding any contrary evidence unless a reasonable juror could not. City
of Keller v. Wilson, 168 S.W.3d 802, 821-23, 827 (Tex. 2005). If there is no more than a
scintilla of evidence to support a vital fact, there is no evidence. Id. at 810.

 The due process clause protects an individual's freedom to work and earn a living. 
Wells v. Doland, 711 F.2d 670, 676 (5th Cir. 1983). Appointment of deputy constables is
within the exclusive control of the constable. See Tex. Loc. Gov't Code Ann. §§ 86.011,
151.003 (Vernon 2008); Renken v. Harris County, 808 S.W.2d 222, 226 (Tex. App.--Houston [14th Dist.] 1991, no writ). "Texas law provides 'sheriffs, and other elected county
officials, virtually unbridled authority in hiring and firing their employees.'" Renken, 808
S.W.2d at 225 (quoting Irby v. Sullivan, 737 F.2d 1418, 1421 (5th Cir. 1984)). An at-will
employee may be fired for any reason or no reason at all. Id.; see generally County of Dallas
v. Wiland, 216 S.W.3d 344, 347 (Tex. 2007). Deputy constables are at-will employees. 
Wiland, 216 S.W.3d at 347.

 Roccaforte cites Paul v. Davis for the proposition that protected liberty interests
include the right to be free from false stigmatization that implicates constitutional interests. 
Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Roccaforte argues
that Greenway's assertion that Roccaforte had broken the law "at the least implicates a
protected liberty interest." In Paul, the issue before the court was whether Davis could
maintain an action under 42 U.S.C. § 1983 based upon the erroneous inclusion by police
officers of his photograph in a flyer depicting "ACTIVE SHOPLIFTERS." Paul, 424 U.S.
at 694-96. As Greenway correctly points out in his brief, the Paul court held that reputation
alone, apart from tangible interests such as employment, is not sufficient to invoke the liberty
or property interest protections of the due process clause. Id. at 701-02. Citing Paul, the
Fifth Circuit recognized that because reputation alone is not a protected liberty interest, "a
plaintiff must show stigma plus an infringement of some other interest." Phillips v.
Vandygriff, 711 F.2d 1217, 1221 (5th Cir. 1983). "A public employee is deprived of a
protected liberty interest either if terminated for a reason which was (I) false, (ii) publicized,
and (iii) stigmatizing to his standing or reputation in his community or if terminated for a
reason that was (I) false and (ii) had a stigmatizing effect such that (iii) he was denied other
employment opportunities as a result." Cabrol v. Town of Youngsville, 106 F.3d 101, 107
(5th Cir. 1997) (citations omitted).

 In the case sub judice, Greenway testified that he provided two required documents
concerning the details of Roccaforte's discharge: a letter to TALX Employer Services and
a TCLEOSE F-5 report. The record contains no evidence that either document was
publicized, (2) nor does the record contain evidence that either document caused Roccaforte's
inability to obtain another position in law enforcement. Therefore, the trial court erred by
denying Greenway's motion for JNOV with respect to Roccaforte's claim for deprivation of
a liberty interest. See generally Cabrol, 106 F.3d at 107; Phillips, 711 F.2d at 1221;
Rowland, 620 S.W.2d at 932-33; see also Tex. R. Civ. P. 301. Accordingly, we sustain
Greenway's sole appellate issue.

Granting of JNOV as to Claim for Deprivation of Property Interest


 By cross point, Roccaforte appeals the granting of JNOV with respect to his claim for
deprivation of a property interest. To uphold a trial court's JNOV, an appellate court must
determine that no evidence supports the jury's findings. Mancorp, Inc. v. Culpepper, 802
S.W.2d 226, 227 (Tex. 1990).

 As discussed above, deputy constables are at-will employees. Wiland, 216 S.W.3d
at 347. Absent a property interest created from an independent source, such as by operation
of contract, state law, or a policy, a government employee does not have a property interest
in government employment. Cabrol, 106 F.3d at 105. In his brief, Roccaforte argues that
Greenway's oral representations to his employees that he would only terminate them for
cause modified Roccaforte's status as an at-will employee. Absent a definite, stated intention
to the contrary, an at-will employment agreement cannot be modified by an employer's oral
assurance that he will not terminate an employee except for good cause. Montgomery County
Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998). As the Texas Supreme Court
explained in Brown,

 General statements . . . simply do not justify the conclusion that the speaker
intends by them to make a binding contract of employment. For such a
contract to exist, the employer must unequivocally indicate a definite intent to
be bound not to terminate the employee except under clearly specified
circumstances. General comments that an employee will not be discharged as
long as his work is satisfactory do not in themselves manifest such an intent. 
Neither do statements that an employee will be discharged only for "good
reason" or "good cause" when there is no agreement on what those terms
encompass. Without such agreement the employee cannot reasonably expect
to limit the employer's right to terminate him. An employee who has no formal
agreement with his employer cannot construct one out of indefinite comments,
encouragements, or assurances.


Id. Likewise, Greenway's statements to Roccaforte that he would not fire an employee
without good cause were not sufficiently specific to modify Roccaforte's status as an at-will
employee who, as such, had no expectation of continued employment. See id. Therefore,
the trial court did not err by granting a JNOV in favor of Greenway as to Roccaforte's claim
for deprivation of a property interest. Accordingly, we overrule Roccaforte's cross point.

Conclusion


 Having sustained Greenway's issue and having overruled Roccaforte's cross point,
we affirm the trial court's granting of JNOV as to Roccaforte's property interest, reverse the
trial court's denial of Greenway's motion for JNOV as to Roccaforte's liberty interest, and
we render judgment that Roccaforte take nothing as to his claims against Greenway.

 AFFIRMED IN PART; REVERSED AND RENDERED IN PART.




 

 

 STEVE McKEITHEN

 Chief Justice

Submitted on August 19, 2009

Opinion Delivered October 29, 2009


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Roccaforte did not introduce a copy of the contract at trial.
2. One generally accepted definition of "publicize" is as follows: "to bring to the
attention of the public: give publicity to[.]" Webster's Third New International
Dictionary 1836 (2002).