**Affirmed and Opinion Filed November 22, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-01141-CV

**BRYAN WOODARD AND LONNY YARBROUGH, Appellants**
**V.**
**DALLAS COUNTY, TEXAS AND BILL GIPSON, Appellees**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-19270**

## MEMORANDUM OPINION

Before Justices Goldstein, Garcia, and Miskel
Opinion by Justice Goldstein

This is an appeal from the trial court's grant of appellees Dallas County and Bill Gipson's plea to the jurisdiction on grounds of sovereign or governmental immunity. In six issues, appellants Bryan Woodard and Lonny Yarbrough (the Deputies) contend that the trial court erred (1) by dismissing their claims without affording them an opportunity to replead; (2) by dismissing their non-monetary claims as those sought prospective rather than retrospective relief and therefore not barred by sovereign or governmental immunity; (3) by dismissing their claims to compel grievance hearings in violation of the Texas Constitution, state statutes and

Dallas County ordinances; (4) by dismissing their claims against Gipson because they alleged his conduct was *ultra vires*; (5) by deciding fact questions in its dismissal determination where it should have considered only the sufficiency of their pleadings; and (6) because its findings of fact preclude certain implied findings. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.2(a); 47.4.[1]

## BACKGROUND

The facts are well-known to the parties and were set forth in large part in our opinion conditionally granting Dallas County and Gipson's petition for writ of mandamus. *See In re Dallas Cnty.*, No. 05-21-01144-CV, 2022 WL 1467987, at *1 (Tex. App.—Dallas May 10, 2022, orig. proceeding) (mem. op.). Briefly, the Deputies' positions as Dallas County deputy constables were terminated in 2018 when, upon being elected as Dallas County Constable for Precinct 2, Gipson declined to swear them in for his term. The Deputies attempted to appeal their adverse employment decision but were denied a grievance hearing. They sued Dallas County and Gipson for wrongful termination and violations of enumerated

---

[1] To the extent either party relies upon, addresses or asserts sovereign immunity, we note to clarify that Dallas County is a political subdivision of the State and Gipson is a public official of the County. "Courts often use the terms sovereign immunity and governmental immunity interchangeably. However, they involve two distinct concepts. Sovereign immunity refers to the State's immunity from suit and liability. In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (citations omitted). We will endeavor not to conflate the pertinent immunities that protects distinct entities here but note that the analysis regarding consent to, or waiver of immunity from, suit is essentially the same for either sovereign or governmental immunity requiring identification of the source, nature and scope of the immunity—whether constitutional, common law or statutory—and any application or legislative abrogation of same.

constitutional rights. Dallas County and Gipson filed separate pleas to the jurisdiction, asserting that the Deputies' claims were barred by governmental immunity. The Deputies then filed their first amended petition and served discovery requests on Dallas County and Gipson. Dallas County and Gipson objected to, and filed a motion to quash, the discovery requests. The Deputies filed a motion to compel, which the trial court granted. Dallas County and Gipson then filed a petition for writ of mandamus from that order.

On mandamus review, we considered whether the trial court erred in granting additional discovery before proceeding to a hearing on Dallas County's and Gipson's pleas to the jurisdiction. *See id.* at *3. We concluded that it did, reasoning:

> Based on our review, the pleas to the jurisdiction constitute a pleadings-based jurisdictional challenge because they do not dispute any of the alleged facts relating to the decisions to not swear in Woodard and Yarbrough as deputy constables following the election and to deny them a grievance hearing.

*Id.* We concluded that the trial court "abused its discretion by compelling *any* discovery before considering the pleas to the jurisdiction." *Id.* (emphasis in original). We directed the trial court to vacate its order compelling discovery within fifteen days of our opinion and to hear the pending pleas to the jurisdiction at its earliest opportunity. *Id.* at *4.

About two weeks before we issued our mandamus opinion, Dallas County and Gipson scheduled their pleas to the jurisdiction for a hearing to take place on July 21, 2022. On July 14, the Deputies filed their second amended petition. The

following day, Dallas County and Gipson filed a supplement to their pleas to the jurisdiction. The trial court heard the pleas to the jurisdiction on July 21 and, the next day, entered an order granting the pleas and dismissing all of the Deputies' claims with prejudice. On July 26, the Deputies filed a request for findings of fact and conclusions of law. The trial court granted their request and entered its findings of fact and conclusions of law on August 12. This appeal followed.

## DISCUSSION

The Deputies raise six issues on appeal contending in five issues that the trial court erred by dismissing the Deputies':

claims without allowing [the Deputies] any opportunity to amend their pleadings after a ruling on the jurisdictional plea, when there was no finding that amendment was futile, nor that [the Deputies'] pleading affirmatively negated jurisdiction.

claims in equity, which are not barred by sovereign immunity or government immunity. [The Deputies'] claims for declaratory judgment, mandamus relief, injunctive relief, and for reinstatement, are not claims for "retrospective relief", nor are they "damage claims for violation[s] of the Texas Constitution", as [the Deputies] expressly pled they "are not seeking money damages."

claims to compel grievance hearings, because the undisputed facts demonstrate that neither Woodward or Yarborough was allowed a grievance hearing, while both the Deputies allege a constitutional right to petition the government; statutory grievance rights under TEXAS GOVERNMENT CODE § 617.005; and departmental grievance rights under Dallas County ordinance.

declaratory judgment claims against [Gipson] based on [Gipson and Dallas County's] argument that "[the Deputies] do not allege ultra vires acts by [Gipson]", when the Deputies alleged "[Gipson's] actions and omissions were *ultra vires* actions and omissions."

–4–

claims by deciding fact questions, when the only issue for the trial court to decide was the sufficiency of the pleadings.

In the sixth issue the Deputies contend that the trial court's findings of fact preclude any implied findings in this case on appeal.

## I. APPLICABLE LAW

Governmental immunity protects political subdivisions of the State, including counties, from suit unless the State consents. *Empower Texans, Inc. v. Dallas Cnty.*, 648 S.W.3d 664, 669 (Tex. App.—Dallas 2022, pet. denied) (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (op. on reh'g)). Governmental immunity from suit deprives the trial court of subject-matter jurisdiction over claims against governmental entities unless the party suing the governmental entity establishes the State's consent to suit. *Id.* at 669–70. Such consent to suit must generally be found in the actions of the legislature. *Id.* at 670. Any purported statutory waiver of immunity should be strictly construed in favor of retention of immunity. *Id.* (citing *PHI, Inc. v. Juvenile Justice Dep't*, 593 S.W.3d 296, 303 (Tex. 2019)). Therefore, a statute shall not be construed as a waiver of immunity unless the waiver is effected by clear and unambiguous language. *Id.*

Governmental immunity also bars suits against government officers. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 157 (Tex. 2016). An exception exists, however, for officers acting outside the scope of their authority. *Id.* at 161. To fall within this so called "ultra vires" exception, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and

ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.*

## II.   STANDARD OF REVIEW

Immunity from suit is properly asserted when the State files a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). A plea to the jurisdiction is a dilatory plea that contests the trial court's authority to determine the subject matter of the cause of action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a trial court's ruling on a plea to the jurisdiction de novo. *Miranda*, 133 S.W.3d at 228; *City of Plano v. Hatch*, 584 S.W.3d 891, 895 (Tex. App.—Dallas 2019, no pet.). In performing this review, we do not look to the merits of the case but consider only the pleadings and evidence relevant to the jurisdictional inquiry. *City of Seagoville v. Lytle*, 227 S.W.3d 401, 408 (Tex. App.—Dallas 2007, no pet.).

To defeat a plea to the jurisdiction, the plaintiff suing the state or its officers must plead facts that, if true, affirmatively demonstrate that sovereign or governmental immunity either does not apply or has been waived. *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021) (sovereign immunity); *see also Perez v. Turner*, 653 S.W.3d 191, 198 (Tex. 2022) (governmental immunity). When a plea to the jurisdiction challenges the pleadings, we must determine if the pleader has alleged sufficient facts to demonstrate affirmatively the trial court's jurisdiction to hear the cause. *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927

(Tex. 2015); *Hatch*, 584 S.W.3d at 895. To make this determination we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true. *Hatch*, 584 S.W.3d at 895. This jurisdictional inquiry "touches the merits," because courts lack jurisdiction over facially invalid claims. *Abbott v. Mexican American Legislative Caucus*, 647 S.W.3d 681, 699 (Tex. 2022). While we must construe the allegations in favor of the plaintiff, we are not bound by legal conclusions. *Brown v. Daniels*, No. 05-20-00579-CV, 2021 WL 1997060, at *7 (Tex. App.—Dallas May 19, 2021, no pet.) (mem. op.).

Where the pleadings do not allege sufficient facts to demonstrate affirmatively the trial court's jurisdiction but do not affirmatively demonstrate an incurable jurisdictional defect, the issue is one of pleading sufficiency, and the plaintiffs should be given an opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227. We review a trial court's decision to deny an amendment to the pleadings for abuse of discretion. *Coastal Habitat All. v. Pub. Util. Comm'n of Tex.*, 294 S.W.3d 276, 283 (Tex. App.—Austin 2009, no pet.) (citing *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994)).

## III. DISCUSSION

### A. Issue 1: Opportunity to Replead

In their first issue, the Deputies contend that the trial court erred by ruling on jurisdiction without giving them an opportunity to replead. They argue that they should have had that opportunity because the trial court did not expressly find, in its findings of fact and conclusions of law, that repleading would have been futile or that their live pleadings affirmatively negated jurisdiction. Dallas County and Gipson do not address the absence of these findings and conclusions, but instead respond that repleading was unnecessary because their challenges to jurisdiction were "based on the nature of the claims as opposed to the facts pled in support of those claims." Dallas County and Gipson also contend that the Deputies' request for an opportunity to replead is barred by the "law of the case" doctrine.

We begin with the law-of-the-case doctrine, which is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). The doctrine does not apply, however, when the issues or facts presented at successive appeals are not substantially the same. *Renate Nixdorf GmbH & Co. KG v. TRA Midland Properties, LLC*, No. 05-17-00577-CV, 2019 WL 92038, at *7 (Tex. App.—Dallas Jan. 3, 2019, pet. denied) (mem. op.). Here, Dallas County and Gipson argue that our determination in *In re Dallas County*—namely, that their pleas to the jurisdiction constitute pleadings-based jurisdictional challenges—is

–8–

binding in this appeal. However, our determination in the mandamus proceeding was based on the Deputies' pleadings and pleas to the jurisdiction that were on file at that time. Once we issued our opinion, the Deputies amended their pleadings without leave of court and over no objection. Dallas County and Gipson then filed a supplement to their pleas to the jurisdiction. Therefore, the law-of-the-case doctrine does not apply, and we must determine anew whether Dallas County and Gipson's supplemented pleas to the jurisdiction raise pleadings-based challenges to the Deputies' second amended petition.

We conclude that they do. As we explained in *In re Dallas County*, "[a] plea to the jurisdiction may be presented as either an attack on the sufficiency of the pleadings, or an evidentiary attack on the existence of jurisdictional facts." *In re Dallas Cnty.*, 2022 WL 1467987, at *3 (citing *Miranda*, 133 S.W.3d at 226–27). When a plea to the jurisdiction challenges the pleadings, we consider whether the pleader has met his or her burden of pleading facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *Id.* (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446). If the pleadings fail to contain sufficient facts that affirmatively demonstrate the trial court's jurisdiction but also do not affirmatively demonstrate an incurable defect, the issue is one of pleading sufficiency and the plaintiffs should be given the opportunity to amend. *Id.* (citing *Miranda*, 133 S.W.3d at 226–27). If

–9–

the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without giving the plaintiffs an opportunity to amend. *Id.* (citing *Miranda* 133 S.W.3d at 227).

The allegations in this case did not materially change between the first and second amended petitions. The Deputies continue to allege that they were terminated when Gipson declined to swear them in once he took office. They further allege that they were denied their timely requested grievance hearings by Gipson and Dallas County. They claim that they were thus forced to obtain employment elsewhere at lower wages. Gipson and Dallas County do not dispute these factual allegations, but rather argue that the Deputies were not entitled to grievance hearings and that their claims are barred by governmental immunity.

We again conclude that Dallas County's and Gipson's pleas to the jurisdiction constitute pleadings-based challenges to the trial court's jurisdiction. *See id.* Because the jurisdictional challenges are based solely on the sufficiency of the pleadings and those pleadings affirmatively negate jurisdiction, as further set forth below, in conjunction with no disputed fact issues, the trial court did not abuse its discretion in failing to grant the Deputies an opportunity to replead.

### B.    Issues 2 and 3: Dismissal of Claims

In their second issue, the Deputies complain that the trial court erred in dismissing their equitable and declaratory claims because such claims sought prospective, not retrospective relief. In their third issue, they complain that the trial

court erred in dismissing their claims to compel grievance hearings because they properly alleged violations of their constitutional right to petition and their statutory grievance rights. In response, Dallas County and Gipson eschew any discussion of prospective or retrospective relief and instead argue simply that the Deputies failed to carry their burden to plead waiver of immunity for their equitable- and declaratory-relief claims because they have not pleaded viable constitutional claims.

### 1. Prospective Versus Retrospective Relief

We address prospective versus retrospective relief as raised in the trial court despite the silence of Gipson and Dallas County on the issue. In *City of El Paso v. Heinrich*, the supreme expounded on the differences between claims for retrospective and prospective relief where immunity is implicated. *See* 284 S.W.3d 366, 373 (Tex. 2009). There, a widow of a deceased police officer sued after discovering a reduction in the monthly payout of her survival benefits under her husband's pension plan. *See id.* at 369. The widow sued the city, the pension fund, the fund's board of trustees, and individual members of the board, alleging that they violated the statute governing the pension fund by reducing her benefits retroactively. *Id.* She sought declaratory relief and an injunction restoring her benefits to the previous amount. *Id.* On appeal, the widow conceded that her claims against the city, the pension fund, and the board of trustees were subject to governmental immunity. She argued, however, that her *ultra vires* claims against the board members were not barred because she alleged that the reduction in her benefits

–11–

were unauthorized by law and she sought only equitable and injunctive relief as opposed to money damages. *Id.* at 370.

The supreme court explained that, as a general rule, the state is immune from suit unless it waives such immunity. *See id.* An exception applies, however, for suits against state officials who act without legal or statutory authority (i.e., who engage in *ultra vires* conduct). *See id.* But even if the plaintiff alleges ultra vires conduct, the remedy sought by the plaintiff "may implicate immunity." *See id.* at 373–74. The court then explained at length why sovereign immunity bars claims for retrospective monetary relief, but not necessarily claims for prospective equitable and declaratory relief even if such remedies might involve monetary expenditures by the state. *See id.* at 374–76. The rule from *Heinrich* is thus a "qualification" to an exception: sovereign immunity generally bars suits against the state and its officers; such officers *are not* immune from claims alleging that they acted illegally or without authority; so long as the plaintiff seeks prospective, not retrospective, relief. *See generally id.*

Here, the Deputies argue that their claims should have survived dismissal because they sought only prospective relief. But as Dallas County and Gipson correctly recognize, the primary issue is whether the Deputies' pleadings affirmatively demonstrate that sovereign and governmental immunity either do not apply or have been waived. *See Matzen*, 659 S.W.3d at 388. If they have not, it is immaterial whether the Deputies seek prospective or retroactive relief. On this

rationale, Dallas County and Gipson argue that the Deputies failed to demonstrate waiver of sovereign and governmental immunity for their equitable and declaratory claims. We therefore consider whether the Deputies effectively pleaded inapplicability or waiver of immunity[2] for each of their claims, reaching the remedy issue—i.e., whether the remedy sought is prospective or retroactive—only where applicable.

### 2.     *The Deputies' Claims*

"Before determining whether appellants' claims are barred by governmental immunity, we must first determine what those claims are." *Bell v. City of Grand Prairie*, 221 S.W.3d 317, 323 (Tex. App.—Dallas 2007, no pet.). We consider whether a trial court has jurisdiction on a claim-by-claim basis. *See Amador v. City of Irving*, No. 05-19-00278-CV, 2020 WL 1316921, at *8 (Tex. App.—Dallas Mar. 20, 2020, no pet.) (mem. op.) (citing *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 152–53 (Tex. 2012)).

In their second amended petition, the Deputies included claims for wrongful termination, equal protection, due course of law, violation of Section 617.005 of the

---

[2] Deputies frame immunity in the second amended petition as sovereign immunity. As we previously noted, governmental immunity is the applicable immunity. *See Taylor*, 106 S.W.3d at 694 n.3; *see also Patel v. Trevino*, No. 01-20-00445-CV, 2022 WL 3720135, at *5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, no pet.) ("A suit against a government employee in her official capacity is a suit against her government employer; therefore, an employee sued in her official capacity has the same governmental immunity, derivatively, as her government employer." (citation omitted)). Although the parties do not distinguish between the two immunities, as related to the distinct entities to which they apply, nor articulate the particular source, consent or waiver, of sovereign immunity, we discern from the live pleading and arguments contained therein, that governmental immunity, as applicable to Dallas County and Gipson, is the applicable immunity being challenged.

–13–

Government Code, declaratory judgment, injunctive relief, mandamus relief, and reinstatement. These claims fall into two categories: (1) claims related to the termination of their employment, and (2) claims related to their grievance rights.

As to the first category, the Deputies "claim the existence of property rights in their employment." Under their wrongful-termination claim, they aver that they were deprived of these rights and seek "injunctive relief and/or mandamus relief" including reinstatement of their employment and benefits, as well as expunction of any negative information in their personnel files. They also assert that their termination constituted a violation of their right to due course of law. Under their claim titled "equitable remedy of reinstatement," they argue that they are entitled to reinstatement of their employment due to the violations of their constitutional rights.

Under the second category, the Deputies complain that Dallas County's denial of their request for formal grievance proceedings violates their First Amendment right to petition the government for redress of their grievances. Similarly, they claim that Section 617.005 of the Government Code affords them the right to have their grievances heard by someone in a position of authority and that any ordinance, regulation, rule, or policy that deprives them of that right violates Section 617.005. They further claim that their equal-protection rights were violated as Dallas County offers grievance procedures to deputy constables hired prior to 2003 but not post-2003 hires. Relatedly, they claim that any Dallas County law or ordinance that

deprives them of access to the civil service system's grievance procedures is unconstitutional as it violates their equal-protection rights.

Some of the Deputies' claims fall into both categories. Their claim for declaratory judgment requests that the court declare that (1) their termination was without cause, without due course of law, and an unconstitutional taking of their property; and (2) their "exclusion from the Dallas County grievance procedures violates the guarantee of equal protection under law." Similarly, their claim for injunctive relief requests an injunction that both (1) prohibits Dallas County from excluding them from its grievance procedures, and (2) compels Dallas County to reinstate them to their former positions. Finally, their request for a writ of mandamus seeks to correct Dallas County's and Gipson's allegedly illegal conduct and infringement of the Deputies' constitutional and statutory rights.

### 3.    *Wrongful Termination and Due Course of Law*

Underpinning the Deputies' wrongful-termination and due-course-of-law claims is the premise that they had property rights in their employment as deputy constables. They allege that these property rights were illegally "taken"[3] without due process or due course of law when Gipson declined to swear them in upon taking

---

[3] To the extent the Deputies attempt to assert a constitutional takings claim predicated on the "taking" of their property rights in continued employment, we conclude the trial court did not err in dismissing such claim. *See Seals v. City of Dallas*, 249 S.W.3d 750, 759 (Tex. App.—Dallas 2008, no pet.) (noting that courts have refused to interpret the takings clause to protect an employee's interest in public employment); *see also Brantley v. Tex. Youth Comm'n*, 365 S.W.3d 89, 106 (Tex. App.—Austin 2011, no pet.) (holding that appellants did not and could not assert a viable takings claim predicated on the "taking" of a public employee's property right in continued employment).

office. Dallas County and Gipson respond that the Deputies were at-will employees and therefore had no property interest in their continued employment. We agree with Dallas County and Gipson.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, § 1. The Texas Constitution similarly provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. These two provisions are "for the most part, coextensive." *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 189 n.7 (Tex. 2022). Where, as here, the parties "do not identify any differences in text or application that are relevant to the issues raised[,] . . . we treat the requirements of both Constitutions as identical." *Id.* "A two-part test governs a due-process claim: we must determine whether petitioners '(1) ha[ve] a liberty or property interest that is entitled to procedural due process protection; and (2) if so, we must determine what process is due.'" *Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019) (brackets in original) (quoting *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995)).

The United States Supreme Court has recognized that certain public employees have property interests in their continued employment. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). Examples include "a public college professor dismissed from an office held under tenure provisions,"

"college professors and staff members dismissed during the terms of their contracts," and "a teacher recently hired without tenure or a formal contract, but nonetheless with a clearly implied promise of continued employment." *See id.* at 576–77 (collecting cases) (internal citations omitted).

The case at bar presents no such property interest in continued employment and is critically distinguishable from the cases cited in *Roth* for the simple reason that the Deputies were at-will employees. In *County of Dallas v. Wiland*, the Texas Supreme Court explained the import of the at-will doctrine: "For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." 216 S.W.3d 344, 347 (Tex. 2007).

Generally, at-will deputy constables have no property interest in their continued employment. In *Renken v. Harris County*, for example, the court affirmed summary judgment against a deputy constable on his wrongful-termination claim, concluding that that public employees like deputy sheriffs and deputy constables "have no legal entitlement to their jobs as public employees" and could be fired "for many reasons or for no articulate reason at all." 808 S.W.2d 222, 225 (Tex. App.— Houston [14th Dist.] 1991, no writ). Similarly, the court in *Gillis v. Wooten* held that a deputy constable's wrongful termination claim failed because his at-will employment status meant that he had no property interest in continued employment.

*See* No. 14-03-01134-CV, 2004 WL 1406299, at *4 (Tex. App.—Houston [14th Dist.] June 24, 2004, no pet.) (mem. op.) ("Without a property interest, Gillis's claims related to his termination fail.").

Courts have also held that the mere existence of grievance procedures do not alter the at-will employment status. *See Haynes v. City of Beaumont*, 35 S.W.3d 166, 179–80 (Tex. App.—Texarkana 2000, no pet.) (stating city grievance procedures alone do not create substantive property rights or alter employees' at-will status); *Cote v. Rivera*, 894 S.W.2d 536, 541 (Tex. App.—Austin 1995, no writ) ("Providing employees procedural rights that protect due process . . . does not create a property interest in the employee's job. . . . An employee who is afforded these rights may retain at-will status. . . . In other words, the existence of procedures cannot be used to 'bootstrap' an employee into having an entitlement."); *Renken*, 808 S.W.2d at 225 (stating deputy constable had no legal entitlement to his job and that mere existence of grievance procedures did not create property interest in employment).

A public employee's at-will status does not end our inquiry. As the supreme court noted in *Wiland*, "at-will employment may be modified" by, for example, "agreement with the employer, as in a personnel manual" or "through civil service systems." *Wiland*, 216 S.W.3d at 348. In that case, the court considered whether county employees such as deputy constables "may be dismissed only for cause." *Id.* at 354. The supreme court noted that Dallas County had, at the time, created a civil service system under Chapter 158 of the Local Government Code. *See id.* at 348

n.11 (citing TEX. LOCAL GOV'T CODE ANN. § 158.001 *et. seq.*). The county had issued a civil service manual in which it included deputy constables in its definition of "employee" and provided that an employee may be terminated for "just cause." *See id.* The manual also afforded county employees grievance rights when faced with adverse employment decisions. But the manual also included a disclaimer stating that "nothing in the [manual] is to be construed as a contract of employment or a provision guaranteeing the specific term or tenure of employment." *See id.* at 349. The supreme court noted the conflicting provisions and acknowledged that the issue of whether the manual changed the deputies' at-will status was a "close question." *See id.* at 354. The court rejected the notion that the deputy constables had substantive due process rights in their continued government employment, but ultimately held that the deputies' procedural due process rights were violated because they were not allowed to participate in formal grievance proceedings. *See id.* at 358.

We take note as instructive Justice Brister's separate opinion, joined by three justices, in which he disagreed that it was a close question. *See id.* at 364 (Brister, J., concurring in part and dissenting in part). Justice Brister would have held that "Public employees have a property interest in continued employment if the government has agreed to fire them only 'for cause.'" *Id.* at 363. Justice Brister summarized the history of Dallas County's civil service system as follows:

> Even governments should be careful what they ask for. After a Dallas district court held that Dallas County deputy constables were at-will employees, Dallas legislators obtained passage of a state law and Dallas County officials adopted a new code extending civil-service protection to them. But when three deputies were discharged in 2001, the County insisted they were still at-will employees, despite all its efforts to the contrary.
>
> Dallas County should be held to its word. If the County wants deputy constables to be terminable-at-will, it must say so, *as it did by amending its civil service code to drop them again in 2003*. But we cannot amend that code as it stood in 2001, and should not allow the County to pretend that changing the code one way and then back again meant nothing in the interim.

*Id.* at 362 (emphasis added).

It is not disputed that Dallas County amended its code in 2003 to exclude deputy constables from the definition of "employee" in the county's civil service manual. *See id.* (citing Order Amending Policy Manual, Order No.2003–1467 (Dallas County Comm'rs Ct. Aug. 19, 2003) (reclassifying deputy constables as "Category A" employees not covered by civil service rules)). Thus, deputy constables hired after 2003 are not afforded the right to participate in the civil service system's grievance procedures. Further, unlike deputy constables hired before that date, there is no law, rule, or contract that alters their at-will status. *Cf. id.* at 348.

Here, it is undisputed that the Deputies were hired after 2003. They were therefore at-will employees throughout their employment period and had no property interest in continued employment. *See id.* Other than the bare assertion that they had such an interest, the Deputies' second amended petition alleges no facts that alters their legal status as at-will employees. We conclude that the trial court did not err in

granting Dallas County's and Gipson's pleas to the jurisdiction on the Deputies' claims for wrongful termination and due-course-of-law violations.

### 4. *Equal Protection*

Under their equal-protection claims, the Deputies argue that by denying them access to the civil service grievance procedures, Dallas County denied their fundamental First Amendment right to petition the government for redress of grievances. Contending further that because Dallas County provides grievance rights to employees hired before 2003 but not those hired after that date, they argue the policy violates their equal protection rights. Dallas County and Gipson argue that the civil service system neither infringes on the Deputies' fundamental rights nor denies them equal protection. We agree with Dallas County and Gipson.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. At its core, the Fourteenth Amendment guarantees the equal treatment of persons that are similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also City of Dallas v. Jones* 331 S.W.3d 781, 787 (Tex. App.—Dallas 2010, pet. dism'd) ("It is critical [in an equal-protection challenge] that the plaintiff allege he is being treated differently from those whose situation is directly comparable *in all material respects*." (emphasis added)). However, "the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to

–21–

various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996). To reconcile the equal-protection principle with practical necessity, the Supreme Court has developed differing levels of judicial scrutiny depending on the kind of classification at issue. *See id.* If the law in question burdens a fundamental right or targets a suspect class, courts review the law under the strict scrutiny standard. *City of Cleburne*, 473 U.S. at 439–40. Otherwise, courts will uphold the classification "so long as it bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631.

The Deputies argue that Dallas County's civil service system classifies deputy constables into two groups: those hired before 2003 and those hired after. With respect to the latter group, the Deputies argue that the system burdens their fundamental right to petition the government for redress of grievances because it excludes them from the formal grievance procedures.

These exact arguments were considered and rejected by the Northern District in *Logan v. Dallas County*, 331 F. Supp. 3d 640, 643 (N.D. Tex. 2017). There, a deputy constable sued Dallas County after his employment was terminated and he was denied participation in the civil service system's grievance procedures. *See id.* at 644. He filed suit and, like the Deputies here, asserted an equal protection claim based on the deprivation of his fundamental right to petition the government for redress of grievances. *See id.* at 647. The court first considered whether Logan intended "to assert a straight up First Amendment . . . claim, or a[] fundamental right/equal protection claim, or an equal protection/suspect class claim." *Id.*

–22–

(footnotes omitted). The court considered all three claims and, in a detailed analysis, held that there was no equal-protection violation:

> Turning first to the traditional equal protection argument, the classification here is constables hired before or after August 19, 2003. Logan cites no authority that discriminating among employees based on date of employment is a suspect classification. The Court holds that it is not. Therefore rational basis scrutiny is appropriate. This requires that the classification be rationally related to a legitimate state interest. *See New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). Here the Commissioners Court could rationally have decided that eliminating civil service protection on a going forward basis would reduce the exposure of the county taxpayers to expensive litigation over civil service rights and procedures. Thus the elimination of civil service protection for Deputy Constables hired after August 19, 2003 survives rational basis scrutiny.

> Logan also at some points appears to make a straight up First Amendment claim, that he has a right to petition the county government and that denying him civil service rights takes away one avenue of petitioning the government. *See* U.S. CONST. amd. 1 ("Congress shall make no law respecting . . . the right of the people . . . to petition the Government for a redress of grievances."). But Logan cites no authority for the proposition that the government has an affirmative duty to make available all possible avenues for petitioning the government. Indeed, Logan acknowledges the Fifth Circuit's statement in *Prof. Ass'n of Col. Educators v. El Paso Cty. Comm. Col. Dist.*, 730 F.2d 258 (5th Cir. 1984) ("*P.A.C.E.*") that: "The Constitution does not require a public employer either to establish a grievance procedure or to respond to grievances lodged by its employees or their union." *Id.* at 263 (citing *Smith v. Arkansas State Hwy. Emps.*, 441 U.S. 463, 465 (1979)). Based on *P.A.C.E.*, the Court finds that not making the avenue of civil service grievances available to Logan, standing alone, does not violate his First Amendment right to petition the government.

> Finally, Logan appears to make an equal protection/fundamental rights variation on this argument: while Logan may not have a standalone right to civil service, the County is discriminating against him by permitting Deputy Constables hired before August 19, 2003 to petition the government through civil service grievances, but not those hired after that date; because the right to petition under the First Amendment

–23–

is a fundamental right, that categorization is subject to strict scrutiny, which it cannot survive. In support of that argument, Logan relies on the sentence in *P.A.C.E.* immediately after the one previously quoted: "Nevertheless, if a public employer voluntarily establishes a grievance procedure, then discriminates or retaliates against union members in administering that process, it violates the first amendment." *Id.* The immediate problem with that argument is that the County did not exclude Logan from the civil service grievance process because he was a member of a union. The First Amendment right at issue in *P.A.C.E.* was the right of professors to associate with one another in a union. *Id.* at 262. That is not implicated here. Logan cites no authority for the proposition that the right to petition through a civil service grievance process is a fundamental right that triggers strict scrutiny. The Court holds that it is not. As discussed above, the withdrawal of civil service protection based on date of hire survives rational basis scrutiny.

*Id.* at 647–48.

We agree with the *Logan* court's analysis. Under any reasonable reading of their pleadings, the Deputies' right to petition was never violated. They conceded that they "were allowed meetings with the Interim Director of the Dallas County Human Resources Department, Urmit Graham, to state their grievances." They complained, however, that Graham "admitted to [them] that he had no power, nor any authority, to order [] Gipson" to swear them in as deputies. Whether that avenue was more or less effective than the civil service grievance process is immaterial; like *Logan*, the Deputies were given an opportunity to air their grievances to a representative of the government. The First Amendment does not require that the government act on their grievance or ensure it is resolved to their satisfaction. *See P.A.C.E.*, 730 F.2d 258, 263. As the *Logan* court observed, "the First Amendment

right to petition does not carry with it a right to prevail."[4] *Logan*, 331 F. Supp. 3d at 648 n.7.

We conclude that the Deputies failed to plead a facially valid equal-protection claim and the trial court did not err in granting Dallas County's and Gipson's pleas to the jurisdiction as to that claim.

### 5.      *Government Code § 617.005*

The Deputies next complain that Dallas County's failure to afford them access to the civil service system's grievance procedure violated Section 617.005 of the Government Code. Chapter 617 of the Government Code relates to collective bargaining and strikes by public employees. It provides:

> This chapter does not impair the right of public employees to present grievances concerning their wages, hours of employment, or conditions of work either individually or through a representative that does not claim the right to strike.

TEX. GOV'T CODE ANN. § 617.005. We recently held that a trial court did not err in granting a plea to the jurisdiction and dismissing a plaintiff's claim based on alleged

---

[4] The *Logan* court noted another untenable problem with the Deputies' position:

> Before addressing the specifics of Logan's arguments, two global points are worth noting. First, Dallas County never took anything away from Logan. He never had civil service protection; it was eliminated for Deputy Constables years before Logan began to work for Dallas County. Second, the implication of Logan's argument is that if a county ever offers civil service protection for any group of employees, it can never change its "mind" and retract that benefit. That would be a startling conclusion.

*Id.* at 647. We agree. The import of the Deputies' position is that an equal-protection challenge will lie any time the government includes what is often called a "grandfather clause" in a repeal of existing law. *See Sklar v. Byrne*, 727 F.2d 633, 639 (7th Cir. 1984) ("If compelling governmental interest scrutiny were appropriate based merely on a showing that newer residents would not benefit from the provision, then virtually any grandfather clause would be vulnerable under that exacting standard.").

violations of Section 617.005 because that provision neither expressly waives immunity nor creates a private right of action. *See Burleson v. Collin Cnty. Cmty. Coll. Dist.*, No. 05-21-00088-CV, 2022 WL 17817965, at \*7 (Tex. App.—Dallas Dec. 20, 2022, no pet.) (mem. op.) (citing *City of Caldwell v. Lilly*, No. 10-12-00102-CV, 2012 WL 3242742, at \*5 (Tex. App.—Waco Aug. 9, 2012, no pet.) (mem. op.) (noting that "nothing in [chapter 617] clearly and unambiguously waives the City's immunity"); *Johnson v. Waxahachie Indep. Sch. Dist.*, 322 S.W.3d 396, 400 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (no private right of action for damages under government code section 617.005)). We conclude that the Deputies failed to affirmatively establish waiver of immunity for their claims under Section 617.005.

### 6. Equitable Relief

In their second amended petition, the Deputies seek mandamus and injunctive relief flowing from the alleged constitutional and statutory violations discussed above. Regarding their wrongful termination and due course of law claims, for example, their requests for injunctive and mandamus relief includes that their employment and benefits be reinstated and that any negative information contained in their personnel files be removed. Regarding their equal-protection and Section 617.005 claims, their requests for injunctive and mandamus relief includes that they be allowed access to the grievance procedures of County's civil service system.

Where a trial court properly dismisses the causes of action underlying a plaintiff's request for mandamus and injunctive relief, it also properly dismisses their

requests for those remedies. *Burleson*, 2022 WL 17817965, at *2. Because we have concluded that the trial court did not err in dismissing the underlying constitutional and statutory claims, we must also conclude that these equitable remedies were also properly dismissed.

### 7.     *Declaratory Relief*

The Deputies next contend that the trial court erred in dismissing their claims for declaratory relief under the Uniform Declaratory Judgments Act (UDJA).

In *Heinrich*, the supreme court acknowledged that although the State and its political subdivisions are immune from suits for money damages absent waiver of immunity, a private litigant "does not need legislative permission to sue the State for a state official's violations of state law." *Heinrich*, 284 S.W.3d at 370 (quoting *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997)). The court explained the rationale behind this exception:

> A state official's illegal or unauthorized actions are not acts of the State. Accordingly, an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars. In other words, we distinguish suits to determine a party's rights against the State from suits seeking damages. A party can maintain a suit to determine its rights without legislative permission.

*Id.* (quoting *Fed. Sign*, 951 S.W.2d at 404). Thus, courts have held that certain claims for declaratory judgment and equitable relief are not subject to dismissal under sovereign immunity. *See Brown*, 2021 WL 1997060, at *9 ("[S]uits for equitable or injunctive relief may in some instances be brought to remedy violations of the Texas

–27–

Constitution"); *see, e.g.*, *City of Fort Worth v. Jacobs*, 382 S.W.3d 597, 599 (Tex. App.—Fort Worth 2012, pet. dism'd) (holding that city was not immune from suit alleging violations of the state constitution that sought equitable remedy of reinstatement).

However, "[t]he fact that a plaintiff alleges unconstitutional conduct by an official does not alone mean it has avoided immunity and invoked a trial court's jurisdiction." *Brown*, 2021 WL 1997060, at *9. "A plaintiff must still plead a valid constitutional violation." *Id.* (citing *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 77 (Tex. 2015)). Thus, neither a request for declaratory relief challenging the constitutionality of a statute nor a constitutional claim for equitable relief, alone, is sufficient to waive immunity. *See City of Houston v. Houston Firefighters' Relief & Ret. Fund*, 667 S.W.3d 383, 396 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (citing *Abbott*, 647 S.W.3d at 698).

Moreover, not every suit seeking declaratory judgment or alleging a constitutional violation will overcome immunity. The UDJA provides that "[a] person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). The Texas Supreme Court has explained that "the UDJA does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's

–28–

jurisdiction.'" *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (per curiam) (quoting *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011)). Accordingly, the UDJA "is not a general waiver of sovereign immunity." *Sawyer Tr.*, 354 S.W.3d at 388. Instead, the UDJA only "waives sovereign immunity in particular cases." *Sefzik*, 355 S.W.3d at 622. "For example, the state may be a proper party to a declaratory judgment action that challenges the validity of a statute." *Id.* However, "the UDJA does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law." *Id.* at 621. "Very likely, the same claim could be brought against the appropriate state official under the ultra vires exception, but the state agency remains immune." *Id.* "Accordingly, the underlying action, if against the state or its political subdivisions, must be one for which immunity has expressly been waived." *Id.* at 622.

We concluded above that the Deputies' constitutional claims as pleaded were not facially valid and were therefore properly dismissed. Consequently, we conclude that the trial court also did not err in dismissing their claims for declaratory relief.

### 8. *Summary*

We conclude that the trial court did not err in holding that the Deputies' affirmative claims and their request for equitable relief in the form of mandamus, declaratory and injunctive relief based on purported constitutional and statutory violations were barred by governmental immunity. As a result, we do not reach the

issue of whether the Deputies sought only prospective, rather than retrospective, relief. We overrule the Deputies' second and third issues.

### C.    Issue 4: Ultra Vires Claims

In their fourth issue, the Deputies complain that the trial court erred in dismissing their claims for declaratory relief against Gipson based on his argument that they failed to allege *ultra vires* acts. The Deputies claim that they did indeed allege that Gipson's conduct was *ultra vires*. Dallas County and Gipson respond that the Deputies' allegations fail to overcome immunity. We agree with Dallas County and Gipson.

Notwithstanding sovereign or governmental immunity, Texas law recognizes "ultra vires" claims seeking prospective injunctive relief against individual government officials in their official capacities. *Matzen*, 659 S.W.3d at 388 (citing *Heinrich*, 284 S.W.3d at 376). "Even if a government entity's immunity has not been waived by the Legislature, a claim may proceed against a government official in his official capacity if the plaintiff successfully alleges that the official is engaging in ultra vires conduct." *Id.* (quoting *Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019)). "The basic justification for this ultra vires exception to sovereign immunity is that ultra vires acts—or those acts without authority—should not be considered acts of the state at all." *Id.* Consequently, 'ultra vires suits do not attempt to exert control over the state—they attempt to reassert the

control of the state' over one of its agents." *Id.* (quoting *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017)).

"Plaintiffs who seek to bypass sovereign immunity using an ultra vires claim must plead, and ultimately prove, that the defendant government official 'acted without legal authority or failed to perform a ministerial act.'" *Id.* (quoting *Heinrich*, 284 S.W.3d at 372). An officer acts without legal authority "if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Id.* at 388 (quoting *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016)). If, however, the actions alleged to be ultra vires were not truly outside the officer's authority or in conflict with the law, the plaintiff has not stated a valid ultra vires claim and therefore has not bypassed sovereign immunity. *Id.* In such cases, sovereign immunity continues to protect state officials from both suit and liability in their official capacities. *Id.*

In their second amended petition, the Deputies included the following relevant factual allegations regarding Gipson's conduct:

> On or about November 6, 2018, Defendant Gipson was elected as the Dallas County Constable for Precinct 2.
>
> On or about November 16, 2018, Defendant Gipson notified Plaintiffs, and other deputy constables, they would not be re-sworn as deputy constables when he took office.
>
> Each Plaintiff timely invoked his grievance rights and attempted to exercise available administrative remedies after receiving notice that he would be terminated.
>
> Neither Plaintiff was given a grievance hearing by Defendant Gipson.

The second amended petition also includes a section titled "Waiver of Sovereign Immunity," in which the Deputies argued why they believed their suit was not barred. Relevant to Gipson, the second amended petition asserts the following:

> Defendants acted without legal or statutory authority and this action does not implicate the sovereign-immunity doctrine.

> Defendant Gipson's illegal actions and omissions were not in the course and scope of employment or agency with Defendant Dallas County, as the scope of Defendant Gipson's employment or agency does not authorize, nor include illegal acts, and Defendant Gipson's actions and omissions were ultra vires actions and omissions.

Under their causes of action, the Deputies explained why they believed Gipson's acts and omissions to be illegal: (1) Gipson's termination of their employment violated their property rights without due course of law; (2) Gipson's refusal to hear their grievances violated their First Amendment right to petition and their statutory grievance right under Section 617.005.

Merely asserting a legal conclusion or labeling a defendant's actions as "ultra vires," "illegal," or "unconstitutional" does not suffice to plead an ultra vires claim—what matters is whether the facts alleged constitute actions beyond the governmental actor's statutory authority, properly construed. *See Fuentes v. Tex. Appraiser Licensing & Certification Bd.*, No. 03-18-00660-CV, 2020 WL 1313734, at *3 (Tex. App.—Austin Mar. 20, 2020, no pet.) (mem. op.).

As we explained above, the Deputies were at-will employees and therefore had no property interest in their continued employment. *See Wiland*, 216 S.W.3d at 347; *Renken*, 808 S.W.2d at 225; *Gillis*, 2004 WL 1406299, at *4. As the elected

county official, Gipson had "virtually unbridled authority in hiring and firing [his] employees." *See Renken*, 808 S.W.2d at 225. He could therefore terminate the Deputies' employment "for many reasons or for no articulate reason at all." *See id.*

We conclude that the Deputies failed to allege facts that constitute actions by Gipson beyond his "properly construed" statutory authority. *See Fuentes*, 2020 WL 1313734, at \*3.

We overrule the Deputies' fourth issue.

## D.    Issue 5: Improper Findings

In their fifth issue, the Deputies complain that the trial court erred in dismissing their claims because it "decided fact questions at the pleading stage, when the proper issue was sufficiency of pleadings."

Findings of fact and conclusions of law are appropriate whenever the trial court receives and could consider evidence in reaching its judgment. *See Phillips v. McNeill*, 635 S.W.3d 620, 626 (Tex. 2021). As we discussed above, Dallas County and Gipson filed "pleadings-based" pleas to the jurisdiction. Therefore, the trial court could not have considered any evidence in reaching its conclusion, and its findings of fact and conclusions of law were inappropriate. *See id.*

Although we conclude that the trial court erred in entering findings of fact and conclusions of law, the error is not reversible. As Dallas County and Gipson point out, it was the Deputies who requested fact findings in the first place. Under the "invited error" doctrine, "[a] party cannot ask something of the trial court and then

complain that the court erred by granting the request." *Dao v. Garcia*, 486 S.W.3d 618, 627 (Tex. App.—Dallas 2016, pet. denied). Additionally, because we have concluded that dismissal of all of the Deputies' claims was appropriate based on the pleadings, any error by the trial court in coming to that same conclusion based on its findings of fact was harmless. *See* TEX. R. APP. P. 44.1; *see also City of Dallas v. Nkansah*, No. 05-18-00069-CV, 2018 WL 6599025, at *4 (Tex. App.—Dallas Dec. 17, 2018, pet. denied) (mem. op.) (applying harmless-error doctrine to trial court's consideration of evidence in deciding plea to the jurisdiction).

We overrule the Deputies' fifth issue.

### E.     Issue 6: Implied Findings

In their sixth issue, the Deputies argue that the trial court's findings of fact and conclusions of law preclude us from presuming any findings the trial court failed to make. Specifically, they note that the trial court made no finding that their pleadings affirmatively negate jurisdiction or that allowing them to amend their pleadings would be futile. They argue that because the trial court did not make these findings, this Court cannot "imply these missing findings in support of the trial court's judgment." They thus request that we remand this case and allow them an opportunity to file amended pleadings.

We reject this argument. The Deputies cite to no case, and we have found none, that stands for the proposition that, in the absence of express findings by the trial court, an appellate court cannot determine whether the pleadings negate

–34–

jurisdiction or that allowing amendments to the pleadings would be futile. Nor should we expect to find such authority, given that the rule about omitted and presumed findings applies to findings *of fact*. *See* TEX. R. CIV. P. 299. Conversely, whether a plaintiff's pleadings affirmatively negate jurisdiction, and whether such pleading defects are incurable, are questions of law. *See Miranda*, 133 S.W.3d at 226 ("Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed de novo."); *see also In re Freestone Underground Storage, Inc.*, 429 S.W.3d 110, 115 (Tex. App.—Texarkana 2014, orig. proceeding) ("Construing pleadings . . . [is an] issue[] of law."). Therefore, even if the trial court's findings of fact and conclusions of law were proper, and even if we were bound by the trial court's fact findings, there is no rule preventing us from correcting the trial court's legal conclusions or supplying legal conclusions that the trial court failed expressly to make. *See Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.) ("We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence."); *see also State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996) ("Conclusions of law which are necessary, but not made, are deemed in support of the judgment.").

We overrule the Deputies' sixth issue.

**CONCLUSION**

We affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
221141F.P05                                          JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRYAN WOODARD AND LONNY
YARBROUGH, Appellants

No. 05-22-01141-CV     V.

DALLAS COUNTY, TEXAS AND
BILL GIPSON, Appellees

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-19270.
Opinion delivered by Justice
Goldstein. Justices Garcia and Miskel
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees DALLAS COUNTY, TEXAS AND BILL GIPSON recover their costs of this appeal from appellants BRYAN WOODARD AND LONNY YARBROUGH.

Judgment entered this 22nd day of November 2024.